[Cite as *Speros v. Secy. of State*, 2017-Ohio-8453.]

| JOHN WILLIAM SPEROS | Case No. 2017-00389-PQ |
|---|---|
| Requester | Special Master Jeffery W. Clark |
| v. | REPORT AND RECOMMENDATION |
| OHIO SECRETARY OF STATE | |
| Respondent | |

{¶1} On March 1, 2017, requester John Speros sent a public records request to respondent Ohio Secretary of State ("SOS") that stated:

    a. "For a personal (non-business) research topic, I request voting results in machine-readable format (e.g., Access or single table Excel) for all congressional races since 2001.

    b. Those data include:  Year; District, Candidate Name, Candidate Political Party Affiliation; Number of Votes Received.

    c. If you have available a larger set of data along these lines, I'd be pleased to receive that collection and extract what I need.

    d. If you have additional questions or recommendations, please let me know that, too."

(Complaint, Attachments p. 3.) On March 3, 2017, SOS Legislative Liaison Emily Groseclose responded:

    e. "Elections results can be found on our website at http://www.sos.state.oh.us/sos/elections/Research/electResultsMain.aspx.

    f. If you have any questions or need further assistance, please don't hesitate to contact me."

(*Id.*, p. 2.)  At the time of this response, the SOS website contained statewide, district, and county results for 2002, and statewide, district, county, and precinct level results for 2004, 2010, 2014, and 2016. It did not contain general

election results data for 2008 or 2012 (Bowling Aff., ¶ 11; Pietenpol July 20, 2017 Aff., ¶ 7-8.) Speros replied:

g. "As I recorded in your voice-mail moments ago, while I appreciate your providing a link the Secretary of State election results web page(s), those data do not portray the information that I seek because those data are not portrayed in a readily useable format which enable year-over-year and district-by-district analysis.

h. More specifically, those data are inadequate for various reasons, including these:

- Each election year's data are portrayed in separate files

- Many of those files are rendered in a (HTML) format which cannot be directly imported into a database

- Each of the files employ widely varying formats—below my signature block please find two examples that indicate how radically different the data are portrayed—that impose very high costs to extract and import (and then error check).

i. That is why *I am requesting Congressional general election results for the years 2002 to 2016 in a single, comprehensive file the format for which can be easily imported into a flat file database.* Technicians will recognize that this format includes a (Excel) spreadsheet, an (Access) database or even a delimited text file.

j. As I mentioned, if you have available a larger set of data along these lines, I'd be pleased to receive that collection and extract what I need. If you have additional questions or recommendations, please let me know that, too."

(Emphasis added.) (Complaint, Attachments p. 1.) On March 10, 2017, Elections Counsel David W. Bowling of the SOS contacted Speros by telephone,

k. "to discuss his concerns regarding the response to his public records request. Mr. Speros stated that he felt someone with an IT background would further understand his request and possess the capability to produce a responsive record. He indicated that he would be following up with a revised public records request to the Secretary of State's Office."

(Bowling Aff., ¶ 7.)  Speros denies that the call concluded with his promise to revise the request, but instead relates his understanding,

> l. "that Mr. Bowling intended to speak with the SOS' computer technologists to learn more about the SOS' data management systems and those systems' ability to export the requested data."

(Speros Aff., ¶ 7.)  Neither party initiated a follow up to this call.  *Id.*

{¶2} On April 27, 2017, Speros filed a complaint under R.C. 2743.75 alleging denial of timely access to all public records responsive to his request, in violation of R.C. 149.43(B)(1), and failure of the SOS to explain its denial in writing, in violation of R.C. 149.43(B)(3).  Following referral to mediation, postponed at Speros' request and eventually held on July 7, 2017, the court was notified that mediation terminated without resolution.  On July 11, 2017, Speros filed an amended complaint. On July 20, 2017, the SOS provided Speros separate spreadsheets for the general elections of 2004, 2006, 2008, 2010, 2012, 2014, and 2016, containing all election results on a precinct level.  (Bowling Aff., ¶ 10.)  On July 24, 2017, the SOS filed its combined response and motion to dismiss.  Pursuant to court order of August 2, 2017 for additional information, the SOS filed an additional pleading and affidavit on August 17, 2017, and Speros filed an affidavit and attachments on August 18, 2017.  Speros filed his reply to respondent's pleadings on September 14, 2017.

{¶3} R.C. 2743.75(F)(1) states that public records claims filed thereunder are to be determined through "the ordinary application of statutory law and case law."  Case law regarding the alternative statutory remedy in mandamus[1] provides that a relator must establish by "clear and convincing evidence" that they are entitled to relief. *State ex rel. Miller v. Ohio State Hwy. Patrol,* 136 Ohio St.3d 350, 2013-Ohio-3720, ¶ 14.  Therefore, the merits of this claim shall be determined under the standard of clear and convincing evidence, i.e., "that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is

---

[1] Formerly R.C. 149.43(C)(1), recodified in 2016 as R.C. 149.43(C)(1)(b), 2016 Sub.S.B. No. 321.

required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus. *See Hurt v. Liberty Twp.*, 5th Dist. Delaware No. 17CAI050031, 2017-Ohio-7820, ¶ 27-30.

**Motion to Dismiss**

{¶4} The SOS moves to dismiss all claims on the grounds that: 1) the SOS has timely produced all pertinent documents that are responsive to Speros' request, 2) Speros made an impermissible request for the SOS to create new records, and 3) Speros failed to identify the records sought with reasonable clarity. In construing a motion to dismiss pursuant to Civ.R. 12(B)(6), the court must presume that all factual allegations of the complaint are true and make all reasonable inferences in favor of the non-moving party. *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192 (1988). Then, before the court may dismiss the complaint, it must appear beyond doubt that plaintiff can prove no set of facts entitling him to recovery. *O'Brien v. Univ. Community Tenants Union, Inc.*, 42 Ohio St.2d 242, 245 (1975). The unsupported conclusions of a complaint are, however, not admitted and are insufficient to withstand a motion to dismiss. *Mitchell* at 193.

{¶5} In ruling on the motion, the court is mindful that the policy underlying the Public Records Act is that "open government serves the public interest and our democratic system." *State ex rel. Dann v. Taft*, 109 Ohio St.3d 364, 2006-Ohio-1825, ¶ 20. Therefore, R.C. 149.43 must be construed "liberally in favor of broad access, and any doubt is resolved in favor of disclosure of public records." *State ex rel. Cincinnati Enquirer v. Hamilton Cty.,* 75 Ohio St.3d 374, 376, 662 N.E.2d 334 (1996).

**Failure to Identify Records with Reasonable Clarity**

{¶6} Respondent states that Speros cannot show that the SOS violated a clear legal duty under R.C. 149.43(B), because a public office has no duty to "respond to

requests that fail to identify the records being sought with reasonable clarity." (Combined response, pp. 1, 3-5.) This defense is in reference to R.C. 149.43(B)(2), which provides, in part:

> m. "If a requester makes an ambiguous or overly broad request or has difficulty in making a request for copies or inspection of public records under this section such that the public office or the person responsible for the requested public record cannot reasonably identify what public records are being requested, the public office or the person responsible for the requested public record may deny the request but shall provide the requester with an opportunity to revise the request by informing the requester of the manner in which records are maintained by the public office and accessed in the ordinary course of the public office's or person's duties."

Speros counters that his request was not ambiguous or overly broad, but that if it was, the SOS failed to comply with R.C. 149.43(B)(2) by not informing him of "the manner in which records are maintained by the public office and accessed in the ordinary course of the public office's or person's duties," in order to facilitate a revised request. (Am. Complaint at ¶¶ 3. d. and 7. a.-c.).

{¶7} In his first email, Speros made a request for specified "voting results" and requested them in "machine readable format" (a term for which he gave non-exclusive examples):

> n. "voting results in machine-readable format (e.g., Access or single table Excel) for all congressional races since 2001. Those data include: Year; District, Candidate Name, Candidate Political Party Affiliation; Number of Votes Received."

(Complaint, Attachments p. 3.) Speros clarified on March 3, 2017 that his request was for the "Congressional general election results for the years 2002 to 2016 in a single, comprehensive file the format for which can be easily imported into a flat file database." (Complaint, Attachments p. 2.) While Speros now characterizes this request as including even separate files capable of being imported into a single database (Reply, p. 16; Combined response, p. 5.), I find that the March 3, 2017 clarification instead

removed ambiguity from the initial request, where he had broadly asked for "machine readable format" but gave as one example, "*single-table* Excel." Instead of adding a request for data in separate year files, Speros expressly rejected the SOS' provision of online data as "inadequate" for reasons including, "[e]ach election year's data are portrayed in separate files." (Complaint, Attachments p. 2.) I find that Speros' accompanying invitation to provide him with "a larger set of data" from which he could "extract what I need" does not include or imply a request for smaller, separate files.

{¶8} The question of whether a request is sufficiently specific to identify what public records are being requested is separate and distinct from the question of whether the requested public records exist. On review of the initial request and pre-complaint correspondence, I find that the request for the specified SOS data in a single machine-readable, comprehensive file was not ambiguous or overly broad. The correspondence prior to the complaint does not reflect confusion over what content was requested, but only whether a single, comprehensive file containing all responsive data existed. This conclusion is further supported by the fact that the SOS did not seem to have any difficulty identifying the election results data content specified in the request, and has provided Speros with the specified data from the listed years. *State ex rel. Morgan v. New Lexington*, 112 Ohio St.3d 33, 2006-Ohio-6365, ¶ 31-36. Finally, the duty of an office to explain how its records are maintained and accessed arises only if the office denies the request as ambiguous, overly broad, or otherwise not reasonably identifying the records sought. R.C. 149.43(B)(2). The SOS did not deny the request for these reasons prior to the filing of the complaint, and a court need not review a party's post-complaint assertion of this defense if it finds that the requests were properly specific. I conclude that Speros made a sufficiently specific and proper request for particular SOS election results data, and that therefore no obligation arose under R.C. 149.43(B)(2) for the SOS to provide information as to how it maintains and accesses its records.

{¶9} Speros also claims that his March 1, 2017 request and March 3, 2017 clarification were broader than a request for only final election results data, and encompassed in addition the following: all original source data, every draft version of "proofing" the data, and every file format in which the drafts ever existed. (Reply, pp. 1, 7-8, 11-13, 16-19.)   However, I find that applying the common rules of language, a request for "election results" means the final record of the results unless accompanied by a more expansive description.   Rather than requesting these additional categories, Speros admits that his request "was silent—intentionally so—as to whether it was requesting only final versions or all versions." (Reply, p. 17.)   Speros did not attempt to expand or clarify the terms of the March, 2017 requests in his amended complaint. (Reply, p. 16.)

{¶10} A public office is only required to produce records that are responsive to the specific terms of the request. *State ex rel. Lanham v. Smith*, 112 Ohio St.3d 527, 2007-Ohio-609, 861 N.E.2d 530, ¶ 14; *State ex rel. Bardwell v. Ohio Atty. Gen.*, 181 Ohio App.3d 661, 2009-Ohio-1265, ¶ 5 (10th Dist.).   In the absence of any request for more than the specified categories and years of "voting results," I do not find clear and convincing evidence that Speros properly requested source data, drafts, or alternate versions. *See State ex rel. McCaffrey v. Mahoning Cty. Prosecutor's Office*, 133 Ohio St.3d 139, 2012-Ohio-4246, 976 N.E.2d 877, ¶ 19-21.

**Suggestion of Mootness**

{¶11} R.C. 149.43(B)(1) provides, in pertinent part, that "[u]pon request, a public office or person responsible for public records *shall make copies of the requested public record available * * **."   In an action to enforce this requirement, a public office may produce requested records prior to the court's decision and thereby render the claim for production moot. *State ex rel. Striker v. Smith*, 129 Ohio St.3d 168, 2011-Ohio-2878, ¶ 18-22.   A court considering a claim of mootness must determine what records were

requested (see preceding section), and then to what extent the responsive records were provided.

{¶12} On July 20, 2017, the SOS sent Speros a disc containing 2004, 2006, 2008, 2010, 2012, 2014, and 2016 general election precinct level results, in Excel format. (Bowling Aff. at ¶ 10, Exh. C., p. 1-2.)  The SOS asserts that these files, along with the 2002 .pdf and other files previously made available on the SOS website, contain all of the existing SOS election results data specified by Speros. (Combined response, pp. 5, 7; Bowling Aff. ¶ 10.)  Regarding data content only, and not format or aggregation, Speros acknowledges that "by now [August 16, 2017] the SOS provided precinct-level congressional vote counts for the general elections 2004-2016, inclusive, but not for 2002." (Speros Aff., ¶ 12.)  The SOS' assertion that only a statewide (not precinct level) spreadsheet exists containing the congressional election results for 2002 is unrebutted (Combined response, pp. 2, 5; Bowling Affidavit, ¶ 12; Pietenpol Aff. July 20, 2017, ¶ 9.) Speros points to no evidence that the SOS has withheld any existing final election results data that is specified in his request.

{¶13} I conclude that the SOS has now produced all records responsive to Speros' request, although not in the "single, comprehensive file" that Speros prefers.

**Request to Create a New Record**

{¶14} Speros claims that the SOS violated R.C. 149.43(B) by failing to produce the requested data in a single, comprehensive file.  The SOS counters that a public office is only required to produce existing records and has no obligation to create new records, including new compilations of dispersed data.  *State ex rel. Lanham v. Smith*, 112 Ohio St.3d 527, 2007-Ohio-609, 861 N.E.2d 530, ¶ 15; *State ex rel. White v. Goldsberry*, 85 Ohio St.3d 153, 154, 707 N.E.2d 496 (1999).

{¶15} Speros correctly notes that if an electronic database used by a public office has existing programming that can produce the output sought in a public records request, then that output already "exists" for the purposes of the Public Records Act.

o. "We hold that the clerk could not be required to create a new 'document' by compiling material to facilitate review of the public records. Conversely, if the clerk's computer were already programmed to produce the desired printout, the "document" would already exist for the purpose of an            R.C. 149.43 request."

*State ex rel. Scanlon v. Deters,* 45 Ohio St.3d 376, 379, 544 N.E.2d 680 (1989), overruled on other grounds by *State ex rel. Steckman v. Jackson,* 70 Ohio St.3d 420, 426-427, 639 N.E.2d 83 (1994); *accord State ex rel. Kerner v. State Teachers Retirement Bd.,* 82 Ohio St.3d 273, 274-275, 695 N.E.2d 256 (1998) ("In order to create the requested records, the board would have had to reprogram its computer system."). Applying the *Scanlon* rationale to a situation where a public office provided all requested data, but declined to cull and compile the data into a format specified by the requester, an appellate court has held:

p. "The question posed * * * is whether the [public office] was obligated, * * * to compile and provide the requested information in a format which was not maintained by the record-keeping authority so as to facilitate review by Fant. This question must be answered in the negative."

*State ex rel. Fant v. Tober*, 8th Dist. Cuyahoga No. 71616, 1997 Ohio App. LEXIS 5312, *8 (Nov. 26, 1997).

{¶16} Thus, the question is whether the SOS' database was already programmed to produce the desired congressional general election results for the years 2002 to 2016 "in a single, comprehensive file" of Excel spreadsheet, Access database, or delimited file, as specified in Speros' clarifying correspondence of March 3, 2017.  The SOS testifies that it does not have a compilation of 2002-2016 congressional election results in a single spreadsheet file, and that the data stored in its "data management system, even if not including the precinct level results, cannot be aggregated using Oracle or any other data management program the Secretary's office may have had in the past." (Pietenpol August 17, 2017 Aff., ¶ 12.)  The SOS explains that even if it attempted to

write new code to create a "single, comprehensive file" of the 2002-2016 congressional election results, potentially insurmountable problems exist:

> q. "Perhaps most noteworthy of these problems, there are over 8,000 precincts in the State of Ohio and they can change each year and from election to election. It is unclear how a single file with precinct level data for seven years (2004, 2008, 2010, 2012, 2014, and 2016) would work when precincts are changing year to year. In addition, after the 2010 census, Ohio went from eighteen to sixteen congressional seats. The boundaries of the congressional districts were also redrawn at this time. Both of these changes, results of congressional redistricting, pose quite a challenge to compiling all precinct level election results into a single file."

(Pietenpol July 20, 2017 Aff., ¶ 10-11; *see, generally*, combined response pp. 1-3, 8-11, and addl. filing p. 2-4, and affidavit citations therein.)

{¶17} Speros asserts that the Oracle database software used by the SOS is capable of producing the output he requests. In support, he references informational web pages describing data file formats and software programs, parses the SOS' responses for contradictions or inferred admissions (*see* Reply, generally), and compares these with the data and metadata available on the SOS website (Am. Complaint, ¶ 5; Speros August 18, 2017 Aff., ¶¶ 6, 8-11, Exh. A-D.). Speros draws the conclusion that the SOS "probably has" additional Oracle report writing capabilities that it could use (Reply, p. 4.), and demands that the SOS provide more detailed responses to the information required by the court order of August 2, 2017, which he believes would provide support for his conclusion. (Reply, p. 3-8.)

{¶18} However, even a reasonable and good faith belief by a requester, based only on inference and speculation, does not constitute the clear and convincing evidence necessary to establish that a responsive document exists. *State ex rel. McCaffrey v. Mahoning Cty. Prosecutor's Office*, 133 Ohio St.3d 139, 2012-Ohio-4246, ¶ 22-26; *State ex rel. Gooden v. Kagel*, 138 Ohio St.3d 343, 2014-Ohio-869, ¶ 8. Although Speros states that SOS Elections Counsel David Bowling told him that the

SOS "publishes election results data to third parties[2] using mechanisms other than the SOS web site" (Speros Aff., ¶ 7.), this would be consistent with Bowling's statement that all persons or entities that have requested any election results since January 1, 2016 "are directed to the Ohio Secretary of State's website *or given the opportunity to view historical results in hard back books stored at the Ohio Secretary of State's office.*" (Bowling Aff., Exh. B, p. 7, Response No. 7.)   In the absence of concrete evidence, Speros urges the court to compel the SOS to provide additional technical explanation of steps taken to produce the congressional election results data, but "there is no duty under R.C. 149.43 for respondents to detail the steps taken to search for records responsive to the requests."  *McCaffrey* at ¶ 26.

{¶19} Requester's opinion, based on inferences from online references and respondent's description of its data systems, is outweighed by the affirmative testimony submitted by respondent regarding the contents and capabilities of those systems. Because Speros fails to prove by clear and convincing evidence that the requested output can be produced, he cannot show that the SOS possessed a duty to produce it.   *McCaffrey*; *Salemi v. Cleveland Metroparks*, 8th Dist. Cuyahoga No. 100761, 2014-Ohio-3914, ¶ 30.

### Requirement to Organize and Maintain Public Records

{¶20} Speros claims that the SOS failed to comply with R.C. 149.43(B)(2), which he characterizes as requiring a public office to "facilitate broader access to public records by organizing and maintaining records in a format usable by the public." (Am. Complaint, ¶ 3. b.)   However, the statute makes no mention of "format," but instead requires that,

> r. "To facilitate broader access to public records, a public office * * * shall organize and maintain public records in a manner that they

---

[2] Although not included in this action, see Speros' public records request of April 24, 2017 (Bowling Affidavit, Exh. B, ¶ 2 and p. 2, definition of "Third Parties") for the parties' understanding of other parties to whom searchable format election result files have been produced.

> can be made available for inspection or copying in accordance with division (B) of this section."

R.C. 149.43(B)(2). In this case, the SOS made copies of the requested records available to Speros, in "machine-readable format" as requested. The aspirational phrase "to facilitate broader access" does not require public offices to maintain records in the best available system, or in multiple formats, or even in a particular medium. "There is no requirement on the part of public agencies * * * to store records in a particular medium in order to provide greater public access to the records." *State ex rel. Margolius v. Cleveland*, 62 Ohio St.3d 456, 461, 584 N.E.2d 665 (1992). Speros cites no statutory or case law requiring the SOS, or public offices generally, to aggregate event-based records into larger time span or content reports, or into a preferred electronic "format."

{¶21} I conclude that Speros fails to show by clear and convincing evidence that the SOS violated R.C. 149.43(B)(2).

### Failure to Provide Records, or Explanation of Denial, Within a Reasonable Period of Time

{¶22} Speros claims that the SOS failed to provide all the existing records from 2008 and 2012 within a reasonable period of time, in violation of R.C. 149.43(B)(1) (Am. Complaint, ¶ 3. a.), and failed to provide an explanation in writing of the denial of those records, in violation of R.C. 149.43(B)(3) (Am. Complaint, ¶ 3. d. i.-ii.). The SOS is required "to compile and publish biennially in a paper, book, or electronic format the election statistics of Ohio [i.e., elections results and data], * * *." R.C. 111.12. Elections statistics are thus among the records that the SOS would be required to maintain as "necessary for the adequate and proper documentation of the * * *, functions, * * *, and essential transactions of the agency and for the protection of the legal * * * rights of the state and persons directly affected by the agency's activities." R.C. 149.40. Although not required to be maintained in a particular "format," the election records of these years were clearly required to be organized and maintained "in a manner that they can

be made available for inspection or copying in accordance with division (B) of this section." R.C. 149.43(B)(2). "In accordance with division (B)" includes the duty to provide copies "within a reasonable period of time." R.C. 149.43(B)(1).

{¶23} The SOS admits that it possessed records of congressional elections results from 2008 and 2012, albeit in flawed or "unproofed" form, at the time of Speros' request (Bowling Aff., July 20, 2017, ¶ 11, Pietenpol Aff., July 20, 2017, ¶ 7-8.). However, the SOS did not provide these records to Speros until July 20, 2017, over four months later. The SOS also did not provide Speros with any explanation in writing (as required when the request is in writing) for not producing these records until its responses were filed in this action. The SOS presents no evidence that it could not have produced, within days of the request, either an explanation for the denial, or copies of the then-existing versions of the 2008 and 2012 elections results.

{¶24} I conclude that Speros has shown by clear and convincing evidence that the SOS failed to provide all records responsive to the request within a reasonable period of time, in violation of R.C. 149.43(B)(1). I also conclude that Speros has shown by clear and convincing evidence that the SOS failed to provide an explanation in writing for the denial of the request for the elections results records of 2008 and 2012, in violation of R.C. 149.43(B)(3).

### Request for Development of the Record

{¶25} Speros urges the court to postpone the determination of this action, and engage in further efforts to develop evidence regarding the SOS's database system capabilities. However, the General Assembly created the Court of Claims public records dispute remedy with the stated goal of "an expeditious and economical" procedure to resolve disputes alleging a denial of access to public records, R.C. 2743.75(A), and not as a replacement for the existing remedy of a mandamus action under R.C. 149.43(C)(1)(b). As a trade-off to achieve the condensed procedure in the Court of Claims, the use of discovery is prohibited. R.C. 2743.75(E)(3)(a). In partial

mitigation, the statute permits the special master to require parties to submit additional information or documentation supported by affidavits. *Id.* While the special master did apply this option to obtain additional information and documentation from the SOS in this case, the procedure cannot replace the full efficacy, or adversarial approach, of civil discovery. However, if a public records requester anticipates that a dispute will require detailed factual exploration of a public office's recordkeeping systems, the requester has the choice of bringing the action in mandamus to take advantage of the tools of discovery. While Speros chose this court for the instant action, he may of course file in mandamus for any future request (that does not pertain to the same set of records). R.C. 149.43(C)(1); R.C. 2743(C)(1).

**{¶26}** Construing Speros' request for additional information and documents as a motion made to the special master, the motion is hereby OVERRULED.

### Improper Disposal of Records

**{¶27}** Speros claims that the SOS has improperly disposed of past election results data in violation of R.C. 149.351(A). However, a claim that a public office has improperly disposed of its public records is subject to enforcement only under R.C. 149.351(B), which provides that a person aggrieved by the alleged violation may commence their enforcement action(s) in the court of common pleas of the county in which division (A) allegedly was violated. *George v. State*, 10th Franklin Nos. 10AP-4, 10AP-97, 2010-Ohio-5262, ¶ 36. I recommend that Speros' claim of improper disposal of records be DISMISSED for lack of subject matter jurisdiction, Civ.R. 12(B)(1).

### Requester's Policy Arguments

**{¶28}** Speros argues at length that the SOS should adopt (or be compelled to adopt) particular data management practices that he believes would enhance public access to and understanding of Ohio election statistics. This court cannot legislate policies or practices that are left to the discretion of a public office. Speros has cited no legal requirement for the Secretary of State to maintain election results so that year-

over-year comparison or other data manipulation is enabled. If the General Assembly intended to require additional standards or functionality for the electronic database containing elections data, it could do so. The "General Assembly is the ultimate arbiter of public policy." *State ex rel. Cincinnati Enquirer v. Dupuis*, 98 Ohio St.3d 126, 2002-Ohio-1038, ¶ 21; *State ex rel. Plain Dealer v. Cleveland*, 106 Ohio St.3d 70, 2005-Ohio-3807, ¶ 54.

{¶29} The parties retain the ability to continue negotiating their respective interests in obtaining and providing election results records, and facilitating their use to the public's benefit. The parties are encouraged to cooperate going forward to achieve mutually acceptable resolution of their interests. *See State ex rel. Morgan v. Strickland*, 121 Ohio St.3d 600, 2009-Ohio-1901, ¶ 18-20, 906 N.E.2d 1105.

**Conclusion**

{¶30} Upon consideration of the pleadings and attachments, I find that the Secretary of State has provided all existing election results data responsive to Speros' request. I recommend that Speros' claim be DISMISSED as MOOT as it relates to production of the specified records. With regard to the requested format, I find that Speros fails to show by clear and convincing evidence that the SOS has a database programmed to produce the requested data in the format of a single, comprehensive file. I recommend that Speros' claim that respondent failed to produce the requested data in an available single, comprehensive file be DENIED.

{¶31} I recommend the court issue an order GRANTING Speros' claims that he was denied access to all requested records within a reasonable period of time, and that he was not provided with a written explanation of the portions of his request that were denied.

{¶32} Based on the above findings, I recommend that Speros is entitled to recover from the SOS the costs associated with this action, including the twenty-five dollar filing fee. R.C. 2743.75(F)(3)(b).

{¶33} *Pursuant to R.C. 2743.75(F)(2), either party may file a written objection with the clerk of the Court of Claims of Ohio within seven (7) business days after receiving this report and recommendation. Any objection shall be specific and state with particularity all grounds for the objection. A party shall not assign as error on appeal the court's adoption of any factual findings or legal conclusions in this report and recommendation unless a timely objection was filed thereto. R.C. 2743.75(G)(1).*

_____
JEFFERY W. CLARK
Special Master

cc:

John William Speros
17310 Harland Avenue
Cleveland, Ohio 44119

Renata Y. Staff
Sarah Pierce
Assistant Attorneys General
Constitutional Offices Section
30 East Broad Street, 16th Floor
Columbus, Ohio 43215

**Filed October 27, 2017**
**Sent to S.C. Reporter 11/7/17**