[Cite as *WCPO-TV v. Ohio Dept. of Health*, 2021-Ohio-1151.]

| | |
|---|---|
| WCPO-TV, A DIVISION OF THE E.W. SCRIPPS CO.<br><br>　　　Requester<br><br>　　　v.<br><br>OHIO DEPARTMENT OF HEALTH<br><br>　　　Respondent | Case No. 2020-00513PQ<br><br>Special Master Jeff Clark<br><br><u>REPORT AND RECOMMENDATION</u> |

{¶1} The Ohio Public Records Act requires that upon request, copies of public records be made available to any person at cost and within a reasonable period of time. R.C. 149.43(B)(1). The state policy underlying the Act is that open government serves the public interest and our democratic system. To that end, the public records statute must be construed liberally in favor of broad access, with any doubt resolved in favor of disclosure of public records. *State ex rel. Rogers v. Dept. of Rehab. & Corr.*, 155 Ohio St.3d 545, 2018-Ohio-5111, 122 N.E.3d 1208, ¶ 6.

{¶2} This action is filed under R.C. 2743.75, which provides an expeditious and economical procedure to enforce the PRA in the Court of Claims. Requester WCPO-TV alleges that respondent Ohio Department of Health violated the PRA by failing to provide it with the total number of COVID-19 deaths for residents of certain Ohio long-term care facilities.

**Requests for Long-Term Care Facility COVID-19 Data**

{¶3} On June 15, 2020, reporter Paula Murphy of WCPO-TV made public records requests to the Ohio Department of Health (ODH) at VitalData@odh.ohio.gov for:

1) The number of COVID-19 deaths in 2020 from residents at Burlington House Rehab and Alzheimer's Care Center on Springdale Road in Hamilton County. The Ohio Department of Health website lists 78 residents at this facility have tested positive for COVID-19. Please provide the date of death and any other information that can be publicly released about those deaths (age, race, sex, etc.)

2) The total number of COVID-19 deaths in 2020 from residents of any nursing home or long-term care facility in Hamilton, Butler, Warren and Clermont counties. I would please request the name of the facility, and the number of deaths of residents from COVID-19.

(Complaint at 3.) On June 16, 2020, ODH responded that:

The Ohio Department of Health is not releasing deaths at long term care facilities by facility for COVID-19 or any other cause of death. We are only reporting it at the county level. A person could be too identifiable and that information is "protected health information," as defined in section 3701.17(A)(2) of the Ohio Revised Code ("R.C.").

(Complaint at 2.)

{¶4} On August 20, 2020, WCPO filed a complaint pursuant to R.C. 2743.75 alleging denial of access to public records. Following unsuccessful mediation, ODH filed a motion to dismiss (Response) on November 25, 2020. On December 3, 2020, WCPO filed a reply. On December 18, 2020, ODH filed a response to the reply (Sur-reply). On December 28, 2020, WCPO filed a supplemental pleading. On March 4, 2021, ODH filed a response to the court's Order of February 16, 2021.

**Motion to Dismiss**

{¶5} To dismiss a complaint for failure to state a claim upon which relief can be granted, it must appear beyond doubt that the claimant can prove no set of facts warranting relief after all factual allegations of the complaint are presumed true and all reasonable inferences are made in claimant's favor. *State ex rel. Findlay Publishing Co. v. Schroeder*, 76 Ohio St.3d 580, 581, 669 N.E.2d 835 (1996). As long as there is a set of facts consistent with the complaint that would allow the claimant to recover, dismissal for failure to state a claim is not proper. *State ex rel. V.K.B. v. Smith*, 138 Ohio St.3d 84, 2013-Ohio-5477, 3 N.E.3d 1184, ¶ 10.

{¶6} ODH argues the complaint fails to state a claim because the requested records do not exist. On review, non-existence of the requested data output is not established on the face of the complaint and attachments. Moreover, as the matter is

now fully briefed this argument is subsumed in ODH's defense on the merits. It is therefore recommended that that the motion to dismiss be denied.

**Burden of Proof**

{¶7} A requester must establish a public records violation by clear and convincing evidence. *Hurt v. Liberty Twp.*, 2017-Ohio-7820, 97 N.E.3d 1153, ¶ 27-30 (5th Dist.). At the outset, the requester bears the burden of production to plead and prove facts showing it sought identifiable public records pursuant to R.C. 149.43(B)(1). *Welsh-Huggins v. Jefferson Cty. Prosecutor's Office,* Slip Opinion No. 2020-Ohio-5371, ¶ 33. WCPO must show that the items sought meet the statutory definition of "records," and that the records were kept by ODH.

{¶8} ODH asserts that, 1) the requested datasets cannot be produced from the ODH data management system, and 2) the requested datasets are exempt from disclosure as "protected health information."

**Request for ODH "Records"**

{¶9} "Records" are defined in R.C. 149.011(G) as

> any document, device, or item, regardless of physical form or characteristic, including an electronic record as defined in section 1306.01 of the Revised Code, created or received by or coming under the jurisdiction of any public office of the state or its political subdivisions, which serves to document the organization, functions, policies, decisions, procedures, operations, or other activities of the office.

"Records" includes documents, items within them, and reports or files aggregated from separate records. *Kish v. Akron,* 109 Ohio St.3d 162, 2006-Ohio-1244, 846 N.E.2d 811, ¶ 24, fn. 3; *State ex rel. Data Trace Info. Servs., L.L.C. v. Cuyahoga Cty. Fiscal Officer*, 131 Ohio St.3d 255, 2012-Ohio-753, 963 N.E.2d 1288, ¶ 28-38.

{¶10} ODH does not dispute that it receives and maintains the COVID-19 death data sought in the requests, as records of the agency. However, ODH argues that no single ODH data system, as programmed, is capable of producing the particular output

sought by WCPO's requests. Analysis thus turns to the capabilities of ODH data systems containing COVID-19 data for residents of long-term care facilities.

**Ohio Disease Reporting System (ODRS)**

{¶11} The Ohio Disease Reporting System (ODRS) is a data management system for tracking, inter alia, COVID-19 infection incidence and the infected individuals' identity, demographics, and death information. (Response, Exh. D – Tarter Aff. I at ¶ 7, 13, 17.) Collection of COVID-19 information for the ODRS is controlled by the Infectious Disease Control Manual (IDCM).[1] The IDCM prescribes entry of "membership in a risk cohort," which can include living in a "long-term care facility" (*Id.* at ¶ 12-13, 16.), defined as:

> long-term acute care hospitals, skilled nursing facilities, assisted living facilities, residential care facilities, intermediate care facilities for the intellectually disabled, wrap-around facilities, and any other facilities providing comparable services.

IDCM, Section 3, Coronavirus Disease 2019 (COVID-19), p. 12. The entry field for "long-term care facility" has only Yes, No, or Unknown as options. (Tarter Aff. I at ¶ 15.) Per the IDCM and the instructions in the 2019 Novel Coronavirus Case Report Form,[2] an individual's residential address is not required reporting information. Nor do the IDCM or form require entry of long-term care facility names or addresses. (*Id.* at ¶ 31-32, 34.) The ODRS contains fields for whether the individual is deceased, and whether the patient died as a result of COVID-19 illness. (*Id.* at ¶ 17.)[3] If not supplied by the reporting entity, the entry as to death from COVID-19 is made in collaboration with

---

[1]     https://odh.ohio.gov/wps/portal/gov/odh/know-our-programs/infectious-disease-control-manual (Accessed March 26, 2021.)

[2] CDC Human Infection with 2019 Novel Coronavirus Case Report Form, link embedded in IDCM, Section 3, Coronavirus Disease 2019 (COVID-19), p. 1.

[3] ODH adds that "[t]he *specific* cause of death is not information collected in ODRS." (Emphasis added.) (*Id.*) Although ODH does not further explain, this can only mean that specificity as to the proximate physical symptom(s) causing death is not collected beyond the general entry of "COVID-19."

ODH's Office of Vital Statistics using cause of death data from Ohio death certificates. (*Id.* at ¶ 18.)

{¶12} Information in the ODRS can be sorted by fields, including county, living in a (non-specified) long-term care facility, and cause of death (*Id.* at ¶ 19). However, such street addresses as are reported in the ODRS are entered in "free form" boxes, and ODH attests that the ODRS cannot search free form boxes. (*Id.* at ¶ 21-23, 34.) ODH attests that the ODRS is thus not designed for or capable of reporting the number of COVID-19 deaths per long-term care facility. (*Id.* at ¶ 30-34, 36.) WCPO counters that any database administrator *could* create, i.e., program, a simple database query to extract the desired data from the free form boxes. (Dec. 28, 2020 Boughman Aff. at ¶ 11.) Based on the above facts, the special master concludes there is not clear and convincing evidence supporting the ability of the ODRS to provide a response to either of WCPO's requests without additional programming.

**COVID-19 Long-Term Care Facilities Chart (LTC Chart)**

{¶13} The ODH separately receives positive COVID-19 test numbers of residents and staff from each long-term care facility, independent of information received through ODRS. (*Id.* at ¶ 26-27.) The data is compiled in a Long-Term Care Facilities Chart (LTC Chart) that does not include any mortality information. (*Id.* at ¶ 37.) Because WCPO's requests seek reports that include COVID-19 deaths from long-term care facilities, and the LTC Chart does not contain any death data, there is no evidence that this tool alone can provide a response to either of WCPO's requests.

**Electronic Death Registration System (EDRS)**

{¶14} Ohio death certificates are submitted to ODH's Office of Vital Statistics (ODH/VS) on a prescribed form. R.C. 3705.16(C), O.A.C. 3701-5-02(A)(2) *Certificate of death* (Appendix B). Local officials may not omit any item requested on the form. O.A.C. 3701-5-02(B)(1) to (3). Requested items include the following as relevant to the requests:

2. Sex

3. Date of Death (Mo/Day/Year)

5a. Age (Years)

8a. Residence State

8b. County

8c. City or Town

8d. Street and Number

8f. Zipcode

14. Decedent's Race

28. Part I. Enter the disease, injuries, or complications that caused the death.

O.A.C. 3701-5-02(A)(2) *Certificate of death* (Appendix B). The death certificate data is maintained by ODH in the Electronic Death Registration System (EDRS). R.C. 3705.07(A). ODH attests that it uses COVID-19 information from death certificates as necessary to populate cause of death fields in the ODRS. (Tarter Aff. I at ¶ 18.) WCPO addressed its public records requests to VitalData@odh.ohio.gov, the contact listed on the ODH Public Health Information Warehouse Mortality page, which makes limited information from Ohio death certificates available online.[4]

{¶15} ODH requires every decedent's full residence address on the death certificate form, and thus in the EDRS database. WCPO identified the long-term care facility in Request No. 1 by name, county, and street. Ideally WCPO would have provided the street number as well, but perfection is not required of public records requests "particularly where, as here, it is evident that the public office was aware of the specific records requested." *State ex rel. Morgan v. New Lexington*, 112 Ohio St.3d 33, 2006-Ohio-6365, 857 N.E.2d 1208, ¶ 37. WCPO referenced the facility as appearing in

---

[4] https://publicappstst.odh.ohio.gov/EDW/DataBrowser/Browse/Mortality (Accessed March 31, 2021.)

a report on the ODH website, and ODH has not objected to the request as failing to reasonably identify the facility.

{¶16} Request No. 1 seeks COVID-19 death data for residents at a single long-term care facility during 2020. Where the facility's address is entered in death certificates as the residence address, those decedents were "resident at" that facility. The EDRS thus contains both the sorting data (residence address, date of death, and cause of death) and the desired demographic data. EDRS data can be searched and sorted by at least two ODH/VS databases. *See Miller v. Ohio Dept. of Health, Vital Statistics*, Ct. of Cl. No. 2020-00618PQ, 2021-Ohio-996, ¶ 10-16. Under the Database Rule, the requested dataset of COVID-19 death data for residents at the facility address therefore exists for the purpose of the Public Records Act. *See Id.* at ¶ 17-20, and cases cited therein.

{¶17} The special master concludes that Request No. 1 is a proper request for reasonably identified, existing ODH records.

### A Response Requiring the Search for and Assembly of Data from Independent Repositories is not an "Existing" Record

{¶18} A public office is not required to organize its records for retrieval in the manner that a requester expects or prefers, *See State ex rel. Zidonis v. Columbus State Community College*, 133 Ohio St.3d 122, 2012-Ohio-4228, 976 N.E.2d 861, ¶ 28-32; *State ex rel. Oriana House, Inc. v. Montgomery*, 10th Dist. Franklin Nos. 04AP-492, 04AP-504, 2005-Ohio-3377, ¶ 86-89 ("while it is reasonable to expect that a public office * * * would organize its records in a reasonable fashion, the fact that [requester] made what it believes to be a specific request to [the office] does not necessarily mandate that [the office] keeps its records in such a way that access to the records requested was possible"), *rev'd on other grounds*, 110 Ohio St.3d 456, 2006-Ohio-4854. The test of whether a public record exists is not what the public office could produce if it wished, or what the requester believes is in the public interest, but only what the office

is required to produce under the law. *See Speros v. Secy. of State*, Ct. of Cl. No. 2017-00389PQ, 2017-Ohio-8453, ¶ 14-21, 28-29, and cases cited therein.

{¶19} Request Number 2 seeks a total COVID-19 death number for "any nursing home or long-term care facility in Hamilton, Butler, Warren and Clermont counties." Unlike Request No. 1, WCPO did not provide ODH with the facility names or addresses in this request, meaning that sorting term is absent. ODH is not required to cross-reference information from other sources to discern which residence addresses in the EDRS are those of long-term care facilities. *See Oriana House, Inc. v. Montgomery* at ¶ 9.

{¶20} WCPO argues that for ODH to perform its functions related to the COVID-19 pandemic it *should* be able to produce the number of COVID-related deaths for individual long-term care facilities. (Reply at 1). Indeed, ODH does not deny that it could do so by manually combining data from multiple databases or by programming a unique, newly coded query. However, ODH credibly denies that it can produce the output from a single database, or that an ODH data management system can combine data from multiple databases using existing programming, which is all it is mandated to do under current public records law. *See Miller v. Ohio Dept. of Health, Vital Statistics*, Ct. of Cl. No. 2020-00618PQ, 2021-Ohio-996, ¶ 17-20, and cases cited therein.

{¶21} The special master concludes that WCPO has not shown by clear and convincing evidence that the dataset described in Request No. 2 is an existing record.

### ODH Failed to Provide WCPO the Opportunity to Revise an Ambiguous or Overly Broad Request

{¶22} By not specifying an existing compilation of records, WCPO's Request No. 2 was a form of "overly broad" request. *See Oriana House, Inc. v. Montgomery* at ¶ 9, 90-93. When denying an overly broad request, a public office is required to

> provide the requester with an opportunity to revise the request by informing the requester of the manner in which records are maintained by

the public office and accessed in the ordinary course of the public office's or person's duties.

R.C. 149.43(B)(2). ODH did not provide WCPO with an opportunity to revise the request and made no effort to explain the manner in which COVID-19 records are maintained and accessed in the ordinary course of ODH's duties. ODH thereby committed a *per se* violation of R.C. 149.43(B)(2). *State ex rel. ESPN, Inc. v. Ohio State Univ.*, 132 Ohio St.3d 212, 2012-Ohio-2690, 970 N.E.2d 939, ¶ 10-15.

{¶23} The General Assembly encourages negotiation to optimize the scope, speed, format, economy, and delivery of public records for requesters, *see* R.C. 149.43(B)(2), (3), (5), (6), (7) and (9). Ohio courts discourages semantic evasion, *State ex rel. Morgan v. New Lexington*, 112 Ohio St.3d 33, 2006-Ohio-6365, 857 N.E.2d 1208, ¶ 37, 56-59; *Sutelan v. Ohio State Univ.*, Ct. of Cl. No. 2019-00250PQ, 2019-Ohio-3675, ¶ 15-16, or forcing requesters to guess what data, organization, or formats are available, *State ex re. Cater v. N. Olmsted*, 69 Ohio St.3d 315, 320, 631 N.E.2d 1048 (1994); *Sutelan* at ¶ 17. The Supreme Court recognizes that

> [t]he broad language used in R.C. 149.43 manifests the General Assembly's intent to jealously protect the right of the people to access public records. We are acutely aware of the importance of the right provided by the act and the vulnerability of that right when the records are in the hands of public officials who are reluctant to release them.

*Rhodes v. New Phila.*, 129 Ohio St.3d 304, 2011-Ohio-3279, 951 N.E.2d 782, ¶ 21.

{¶24} "One of the salutary purposes of the Public Records Law is to ensure accountability of government to those being governed," *State ex rel. Strothers v. Wertheim*, 80 Ohio St.3d 155, 158, 684 N.E.2d 1239 (1997), including through the data-gathering efforts of news media. *Eye on Ohio v. Ohio Dept. of Health*, Ct. of Cl. No. 2020-00279PQ, 2020-Ohio-5278, ¶ 3. ODH is thus encouraged to cooperate fully in response to any revision of WCPO's Request No. 2 to achieve a mutually acceptable resolution. *See State ex rel. Morgan v. Strickland*, 121 Ohio St.3d 600, 2009-Ohio-1901, 906 N.E.2d 1105, ¶ 18-20.

**Exception Claimed**

{¶25} Records kept in a public office database are public, absent an applicable exception. An exception is a law prohibiting or excusing disclosure of otherwise public records. ODH claims that records in the relevant databases are excepted from public records disclosure as "protected health information," pursuant to R.C. 3701.17.

{¶26} The burden to establish an exception rests on the public office. *State ex rel. Welsh-Huggins v. Jefferson Cty. Prosecutor's Office,* Slip Opinion No. 2020-Ohio-5371, ¶ 35. Exceptions are strictly construed against the public-records custodian. *State ex rel. Rogers v. Dept. of Rehab. & Corr.*, 155 Ohio St.3d 545, 2018-Ohio-5111, 122 N.E.3d 1208, ¶ 7. A custodian does not meet this burden if it has not proven that the requested records fall squarely within the exception. *State ex ref. Cincinnati Enquirer v. Jones-Kelley,* 118 Ohio St.3d 81, 2008-Ohio-1770, 886 N.E.2d 206, paragraph two of the syllabus. Any doubt should be resolved in favor of disclosure of public records. *State ex rel. James v. Ohio State Univ.*, 70 Ohio St.3d 168, 169, 637 N.E.2d 911 (1994).

**Protected Health Information**

{¶27} R.C. 3701.17 provides, in pertinent part:

(A) As used in this section:  * * *

(2) "Protected health information" means information, in any form, including oral, written, electronic, visual, pictorial, or physical that describes an individual's past, present, or future physical or mental health status or condition, receipt of treatment or care, or purchase of health products, if either of the following applies:

> (a) The information reveals the identity of the individual who is the subject of the information.

> (b) The information could be used to reveal the identity of the individual who is the subject of the information, either by using the information alone or with other information that is available to predictable recipients of the information.

(B) Protected health information reported to or obtained by the director of health, the department of health, or a board of health of a city or general health district is confidential and shall not be released without the written consent of the individual who is the subject of the information * * *

(C) Information that does not identify an individual is not protected health information and may be released in summary, statistical, or aggregate form. Information that is in a summary, statistical, or aggregate form and that does not identify an individual is a public record * * *.

**Request No. 2**

{¶28} As noted earlier, ODH databases cannot produce the output described in Request No. 2. It is therefore unnecessary for the court to determine whether the requested output falls squarely under the definition of "protected health information."

**Request No. 1**

{¶29} A certified Ohio death certificate must be released to any person who pays a fee, pursuant to R.C. 3705.23(A). ODH prints death certificates using the death certificate data kept in the Electronic Death Registration System (EDRS). *See Miller v. Ohio Dept. of Health, Vital Statistics*, Ct. of Cl. No. 2020-00618PQ, 2021-Ohio-996, ¶ 10-20. The information in certified death certificates is released without any restriction on further disclosure. By requiring unconditional public release of this information to the public, R.C. 3705.23 specifically removes death certificate contents from application of the general exception contained in R.C. 3701.17. *Id.* at ¶ 25-27. ODH fails to explain how identical public data, requested from the same database, would be subject to the exception in R.C. 3701.17 when aggregated in a report, but not when printed in an individual death certificate. For more detailed analysis of the inapplicability of R.C. 3701.17 to death certificate contents, *see Miller* at ¶ 28-29.

{¶30} Based on the facts and circumstances of this case, the special master concludes that ODH has not shown the clear and convincing proof[5] necessary to apply R.C. 3701.17 as an exception to disclosure of the requested records.

---

[5] *See State ex rel. Summers v. Fox*, Slip Opinion No. 2020-Ohio-5585, ¶ 33.

**Conclusion**

{¶31} Accordingly, the special master recommends the court order respondent to provide requester with a copy of the records described in Request No. 1. The special master further recommends the court find that respondent did not violate R.C. 149.43(B)(1) in denying records responsive to Request No. 2, but that ODH did violate R.C. 149.43(B)(2) by failing to provide requester with relevant information to revise the request. The special master recommends the court order that requester is entitled to recover from respondent the amount of the filing fee of twenty-five dollars and any other costs associated with the action that it has incurred. It is recommended costs be assessed to respondent.

{¶32} *Pursuant to R.C. 2743.75(F)(2), either party may file a written objection with the clerk of the Court of Claims of Ohio within seven (7) business days after receiving this report and recommendation. Any objection shall be specific and state with particularity all grounds for the objection. A party shall not assign as error on appeal the court's adoption of any factual findings or legal conclusions in this report and recommendation unless a timely objection was filed thereto. R.C. 2743.75(G)(1).*

JEFF CLARK
Special Master

**Filed April 1, 2021**
**Sent to S.C. Reporter 4/6/21**