Kennedy, J.
*546 {¶ 1} In this original action, relator, Cor-re-don Rogers, seeks a writ of mandamus to compel respondent, Ohio Department of Rehabilitation and Correction ("DRC"), to release security-camera video footage related to a use-of-force incident at Marion Correctional Institution ("MCI"). Rogers also seeks an award of statutory damages, attorney fees, and court costs. Because we hold that the requested record is neither an "infrastructure record" nor a "security record" under R.C. 149.433, we grant the writ of mandamus and order DRC to provide Rogers with an unredacted copy of the requested video. We further order DRC to reimburse Rogers for the court costs he paid to commence this original action, and we grant Rogers's request for attorney fees and statutory damages. We deny as moot DRC's motion for a protective order.
I. Background
A. Public-records request
{¶ 2} On February 15, 2017, Rogers, a DRC employee at MCI, sent a public-records request by electronic and certified mail to Pamela Shaw, administrative assistant to the warden at MCI. The request was for "any and all videos related to the following: 1. November 10, 2015 Use of Force Event involving Officer Shiffer and Lieutenant Byrd and Inmate Wilt (also referred to as a 'secondary Use of Force' on page 3 of Captain Straker's November 20, 2015 Investigation Summary Use of Force)." (Boldface and capitalization omitted.) On the same day, Shaw responded with an e-mail stating that the request was denied because "[t]he record of the security video cameras * * * is exempt from public record disclosure as both an infrastructure record and a security record, as *1211 set forth in RC 149.433(B) and Ohio Administrative Code 5120-9-49(B)(6) and (B)(7)." Shaw further stated that the requested video "discloses the configuration of the department's critical systems, including security systems. The record also contains specific camera placement information that is directly used for protecting or maintaining the security of the department against attack, interference, sabotage, or to prevent, mitigate, or respond to acts of terrorism."
B. Procedural history
{¶ 3} On March 7, 2017, Rogers filed a complaint for a writ of mandamus alleging that DRC wrongly denied him timely access to the requested record in violation of R.C. 149.43(B). After mediation efforts were unsuccessful, DRC filed an answer to the complaint. On November 1, 2017, we granted an alternative writ and ordered DRC to file unedited copies of the withheld video under seal.
*547 151 Ohio St.3d 1423, 2017-Ohio-8371, 84 N.E.3d 1061. DRC complied with the order, and the parties submitted a joint stipulation of facts. In addition, Rogers submitted as evidence his own affidavit, the affidavit of his attorney, James J. Leo, and copies of DRC's responses to Rogers's discovery requests. DRC submitted as evidence the affidavits of David Bobby, Northwest Regional Director for DRC, and Trevor Clark, DRC Assistant Chief Counsel.
C. Description of sealed evidence
{¶ 4} The camera that created the video at issue is in plain view. The video is continuous, soundless, and runs for two minutes and 28 seconds. The entire use-of-force incident is less than one minute of the video.
II. Legal Analysis
A. Mandamus and the Public Records Act
{¶ 5} Mandamus is an appropriate remedy to compel compliance with Ohio's Public Records Act. See R.C. 149.43(C)(1)(b). To be entitled to the writ, Rogers must demonstrate that he has a clear legal right to the requested relief and that DRC has a clear legal duty to provide the relief. State ex rel. Cincinnati Enquirer v. Sage , 142 Ohio St.3d 392, 2015-Ohio-974, 31 N.E.3d 616, ¶ 10. We consider the merits of Rogers's claim under the standard of clear and convincing evidence, which is understood as
that measure or degree of proof which is more than a mere "preponderance of the evidence," but not to the extent of such certainty as is required "beyond a reasonable doubt" in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.
Cross v. Ledford , 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus; see State ex rel. Cincinnati Enquirer v. Deters , 148 Ohio St.3d 595, 2016-Ohio-8195, 71 N.E.3d 1076, ¶ 19 (under the Public Records Act, a relator must prove, by clear and convincing evidence, his or her entitlement to relief in mandamus).
{¶ 6} R.C. 149.43(B)(1) requires a public office to make copies of public records available to any person upon request, within a reasonable period of time. A "public record" is a record "kept by any public office," including state offices. R.C. 149.43(A)(1). Because MCI is a public institution operated by a state agency, it qualifies as a "public office." See R.C. 149.011(A). The state policy underlying the Public Records Act is that "open government serves the public interest and our democratic system." State ex rel. Dann v. Taft , 109 Ohio St.3d 364, 2006-Ohio-1825, 848 N.E.2d 472, ¶ 20. To that end, the public-records statute "must be *548 construed 'liberally in favor of broad *1212 access, and any doubt is resolved in favor of disclosure of public records.' " State ex rel. School Choice Ohio, Inc. v. Cincinnati Pub. School Dist. , 147 Ohio St.3d 256, 2016-Ohio-5026, 63 N.E.3d 1183, ¶ 12, quoting State ex rel. Cincinnati Enquirer v. Hamilton Cty. , 75 Ohio St.3d 374, 376, 662 N.E.2d 334 (1996).
B. Claimed exceptions-infrastructure and security records
{¶ 7} DRC must produce the video to Rogers unless it proves that the video fits within one of R.C. 149.43's specific exceptions or the general exception for "[r]ecords the release of which is prohibited by state or federal law," R.C. 149.43(A)(1)(v). See also Sage at ¶ 11. Exceptions to the Public Records Act "must be strictly construed against the public-records custodian, and a records custodian bears the burden of establishing the applicability of an exception." State ex rel. Physicians Commt. for Responsible Medicine , 108 Ohio St.3d 288, 2006-Ohio-903, 843 N.E.2d 174, at ¶ 28. To meet its burden, the records custodian must prove that the requested records "fall squarely within the exception." State ex rel. Cincinnati Enquirer v. Jones-Kelley , 118 Ohio St.3d 81, 2008-Ohio-1770, 886 N.E.2d 206, ¶ 10.
{¶ 8} DRC asserts that the video is not a public record because it qualifies as an infrastructure record and a security record, both of which are stated exceptions to the definition of a "public record," and therefore is not subject to release or disclosure under R.C. 149.43. R.C. 149.433(B)(1) and (2).
1. Infrastructure records
{¶ 9} An "infrastructure record" is "any record that discloses the configuration of critical systems including, but not limited to, communication, computer, electrical, mechanical, ventilation, water, and plumbing systems, security codes, or the infrastructure or structural configuration of a building." R.C. 149.433(A). Importantly, an infrastructure record "does not mean a simple floor plan that discloses only the spatial relationship of components of the building." Id.
{¶ 10} DRC contends that the video is an infrastructure record because "videos in [DRC] institutions * * * can and often do disclose the configuration of critical systems, including, but not limited to, security protocols and the infrastructure or structural configuration of the institution." The critical systems that DRC identifies as being compromised by providing this video to the public include "secure fence alarms [and] entrance and exit security procedures." DRC adds that "not only do the security videos in [DRC] institutions disclose other critical systems, but the network of security cameras itself is a critical system." Further, DRC contends that "the scope and camera angles of the videos show various aspects of the infrastructure of the respective institutions, and are a window into what is not captured by the camera."
*549 {¶ 11} DRC's argument notwithstanding, we hold that the video in question is not an infrastructure record under R.C. 149.433(A). The definition of "infrastructure record" explicitly excludes "a simple floor plan that discloses only the spatial relationship of components of the building." R.C. 149.433(A). The video at issue here captures a portion of the Dorm 6 East hallway at MCI. The video shows the junction where another hallway meets the Dorm 6 East hallway and shows windows, doors, and vents in the Dorm 6 East hallway. These individual components of the hallway show "only the spatial relationship of components of the building" that would be revealed in a simple floor plan. Therefore, the video is not an infrastructure record.
*1213 {¶ 12} Further, in order for the video to qualify as an infrastructure record under R.C. 149.433(A), it must disclose the configuration of a critical system. DRC claims that the video discloses the configuration or "network of security cameras" within MCI and that it therefore satisfies the definition of an infrastructure record. However, the video does not reveal the location of any video cameras other than the one that recorded the incident at issue. Nor does it show the location of any fire or other alarms, correctional-officer posts, or the configuration of any other critical system. The disclosure of windows, doors, and vents in the Dorm 6 East hallway falls far short of disclosing the underlying configuration of a critical system.
{¶ 13} Accordingly, DRC has not met its burden to show that the video "falls squarely within the exception" for infrastructure records under R.C. 149.433(A). See Jones-Kelley , 118 Ohio St.3d 81, 2008-Ohio-1770, 886 N.E.2d 206, at ¶ 10.
2. Security records
{¶ 14} DRC also argues that the video is exempt from disclosure because it is a security record. R.C. 149.433(B)(1) provides that a "record kept by a public office that is a security record is not a public record under [ R.C. 149.43 ] and is not subject to mandatory release or disclosure under that section." A "security record" includes "[a]ny record that contains information directly used for protecting or maintaining the security of a public office against attack, interference, or sabotage," or that is "assembled, prepared, or maintained by a public office * * * to prevent, mitigate, or respond to acts of terrorism." R.C. 149.433(A)(1) and (2). This includes the "portions of records containing specific and unique vulnerability assessments or specific and unique response plans either of which is intended to prevent or mitigate acts of terrorism, and communication codes or deployment plans of law enforcement or emergency response personnel." R.C. 149.433(A)(2)(a).
{¶ 15} In another recent public-records case, we held that records documenting direct threats against the governor kept by the Department of Public Safety met the definition of "security records" under R.C. 149.433(A).
*550 State ex rel. Plunderbund Media v. Born , 141 Ohio St.3d 422, 2014-Ohio-3679, 25 N.E.3d 988, ¶ 30. However, we cautioned that the exception must be proved in each case:
This is not to say that all records involving criminal activity in or near a public building or concerning a public office or official are automatically "security records." The department and other agencies of state government cannot simply label a criminal or safety record a "security record" and preclude it from release under the public-records law, without showing that it falls within the definition in R.C. 149.433.
Id. at ¶ 29. And when a public office claims an exception based on risks that are not apparent within the records themselves, the office must provide more than conclusory statements in affidavits to support its claim. See State ex rel. Besser v. Ohio State Univ. , 89 Ohio St.3d 396, 400-401, 732 N.E.2d 373 (2000).
{¶ 16} DRC contends that it is "the content that is captured in the security video footage-the capabilities and vulnerabilities of [DRC's] security protocols-which renders the records exempt from public disclosure." DRC Northwest Regional Director Bobby states that "[s]ecurity videos-particularly those that capture a response to a use of force incident-show the institution's plan of attack and security features that the institution has in place so that the disturbance can be interrupted as quickly and safely as possible."
*1214 DRC reasons that "[p]ublic dissemination of the areas of Ohio prisons that are not capable of being monitored by security video would allow nefarious acts of violence to occur outside the security camera's scope."
{¶ 17} In support of its argument, DRC relies upon a recent decision of the Supreme Court of New Jersey holding that "the broad brush of compelled release under [New Jersey's public-records law], on demand for any or no reason, of the Township's security system's surveillance videotape product, revealing its capabilities and vulnerabilities, is contrary to the legislative intent motivating [the statute's] exemptions based on security concerns." Gilleran v. Bloomfield Twp. , 227 N.J. 159, 177, 149 A.3d 800 (2016). The portion of the public-records law reviewed by the court in Gilleran exempts from disclosure " 'information which is deemed to be confidential' " including " 'emergency or security information or procedures for any buildings or facility which, if disclosed, would jeopardize security of the building or facility or persons therein' " and " 'security measures and surveillance techniques which, if disclosed, would create a risk to the safety of persons, property, electronic data or software.' " Id. at 170-171, quoting N.J.Stat.Ann. 47:1A-1.1. The Gilleran court held that the video recording requested was within New Jersey's public-records law's exception for security *551 records and thus not subject to public access. DRC urges us to hold, similarly, that video recordings from cameras located within and around DRC-owned institutions are categorically excepted from disclosure under Ohio's Public Records Act.
{¶ 18} However, Gilleran does not control the outcome here. The security exception in the New Jersey public-records law specifically exempts "surveillance techniques" from disclosure, and the Ohio Public Records Act does not. As the Gilleran court observed, the New Jersey security-record exception broadly "preclud[es] disclosure of a category of information, specifically reaching records that reveal 'security measures and surveillance techniques' so as not to place at risk the safety of property, which includes public buildings, and people." Id. at 172. Moreover, we previously had the opportunity to construe the security exception as creating a categorical bar in Plunderbund and chose not to do so. 141 Ohio St.3d 422, 2014-Ohio-3679, 25 N.E.3d 988, at ¶ 29.
{¶ 19} DRC has not met its burden to show that the requested video falls squarely within the security-record exception codified in R.C. 149.433(B). First, the evidence it offers to support the applicability of the claimed exception pales in comparison to the evidence we considered in Plunderbund . Here, DRC has provided only two affidavits, one of which merely concludes that "it is [DRC] policy that security videos within correction institutions are not public records, and are therefore not disclosed in response to public records requests." Bobby's affidavit contains more information regarding the applicability of the exception, yet even his testimony is general and insufficient to meet DRC's burden in this case. Beyond these bare allegations, DRC has not attempted to explain how the video recording at issue actually constitutes "information directly used for protecting or maintaining the security of a public office against attack, interference, or sabotage," or was "assembled, prepared, or maintained by a public office * * * to prevent, mitigate, or respond to acts of terrorism." R.C. 149.433(A)(1) and (2).
{¶ 20} Even if the video at issue had been properly withheld as a security record when requested, "[a]n initial correct withholding of a record as a security *1215 record under R.C. 149.433(A)(1) does not establish the exception in perpetuity." Gannett GP Media, Inc. v. Ohio Dept. of Pub. Safety , Ct. of Cl. No. 2017-00051-PQ, 2017-Ohio-4247, ¶ 32. In the context of public-records requests, we "consider the facts and circumstances existing at the time that [we make our] determination on a writ of mandamus, not at some earlier time." State ex rel. Quolke v. Strongsville City School Dist. Bd. of Edn. , 142 Ohio St.3d 509, 2015-Ohio-1083, 33 N.E.3d 30, ¶ 29.
{¶ 21} DRC has not provided evidence showing, for instance, that this 2015 video recording is being used in a current investigation regarding the incident *552 depicted in it or that the video discloses any current security response plans or other protocols. And the video footage Rogers has requested is from a single video camera on a specified day and time and does not contain any information as to the network of cameras operating in and around the prison. In short, DRC has not offered any analysis as to why the video requested in this case fits squarely within the exception. And as we made clear in Plunderbund , every record claimed under the security-record exception to disclosure must be considered separately. For these reasons, we hold that the requested video is not a security record under R.C. 149.433(A) and thus not exempt from disclosure under R.C. 149.43.
{¶ 22} In conclusion, DRC has not met its burden to show that the requested video is exempt from disclosure as either an infrastructure record or a security record. Accordingly, we grant Rogers's request for a writ of mandamus and order DRC to release the unedited video, and we order DRC to reimburse Rogers for the court costs he paid to file this original action. See R.C. 149.43(C)(3)(a)(i) ("If the court orders the public office or the person responsible for the public record to comply with division (B) of this section, the court shall determine and award to the relator all court costs, which shall be construed as remedial and not punitive").
C. Statutory damages
{¶ 23} R.C. 149.43(C)(2) provides for an award of statutory damages to a requester of public records when a court determines that the public office failed to comply with an obligation to provide access to the records. It states that a requester who makes a written request by hand delivery or certified mail[1] to the public office and is wrongfully denied public records "shall" be entitled to statutory damages of $100 per business day-"beginning with the day on which the requester files a mandamus action to recover statutory damages, up to a maximum of one thousand dollars." R.C. 149.43(C)(2) provides that "[t]he award of statutory damages shall not be construed as a penalty, but as compensation for injury arising from lost use of the requested information. The existence of this injury shall be conclusively presumed." This court has defined a "conclusive presumption" as "an inference which the law makes so peremptory that it may not be overcome by any contrary proof, however strong." State ex rel. Walker v. Clark , 144 Ohio St. 305, 311, 58 N.E.2d 773 (1944).
*553 {¶ 24} R.C. 149.43(C)(2) starts with the statement that a requester who successfully brings a mandamus action is entitled to statutory damages. A court may reduce the award or decide to not award statutory damages if it determines both of the following:
*1216 (a) That, based on the ordinary application of statutory law and case law as it existed at the time of the conduct or threatened conduct of the public office or person responsible for the requested public records that allegedly constitutes a failure to comply with an obligation in accordance with division (B) of this section and that was the basis of the mandamus action, a well-informed public office or person responsible for the requested public records reasonably would believe that the conduct or threatened conduct of the public office or person responsible for the requested public records did not constitute a failure to comply with an obligation in accordance with division (B) of this section;
(b) That a well-informed public office or person responsible for the requested public records reasonably would believe that the conduct or threatened conduct of the public office or person responsible for the requested public records would serve the public policy that underlies the authority that is asserted as permitting that conduct or threatened conduct.
R.C. 149.43(C)(2).
{¶ 25} We decline to reduce Rogers's statutory-damages award. In order to satisfy the reduction factor in R.C. 149.43(C)(2)(a), the court would have to conclude that "based on the ordinary application of statutory and case law as it existed at the time of" the failure to produce the records, "a well-informed public office or person responsible for the requested public records reasonably would believe" that the failure to produce the records "did not constitute a failure to comply with an obligation" under R.C. 149.43(B) to produce public records. As demonstrated above, there was no statutory or precedential force behind DRC's arguments that the security footage was an exception to the definition of a "public record" as an infrastructure record under R.C. 149.433(B)(2) or as a security record under R.C. 149.433(B)(1).
{¶ 26} The statutory definition of "infrastructure record" specifically excludes "a simple floor plan that discloses only the spatial relationship of components of the building," R.C. 149.433(A), which is the only information relevant to the layout of the prison revealed in the video. Furthermore, to be considered an infrastructure record under R.C. 149.433(A), the video must disclose the "configuration of critical systems." DRC claims that the video discloses the configuration or "network of security cameras" within MCI and that it therefore satisfies the definition of an infrastructure record. However, the video does not reveal the *554 location of any video cameras other than the one that recorded the incident at issue. Information about one video camera by definition does not reveal the configuration of the entire system of video cameras.
{¶ 27} Additionally, DRC's argument that the video is a security record as defined in R.C. 149.433(A)(1) and (2) is not reasonable. DRC submitted conclusory affidavits claiming the exception should apply and relied upon a decision from an out-of-state court, the Supreme Court of New Jersey, interpreting a significantly different statute, for the proposition that the video footage from cameras located within and around DRC-owned institutions is categorically exempted from disclosure under Ohio's Public Records Act.
{¶ 28} "Exceptions to disclosure under the Public Records Act are strictly construed against the public-records custodian, and the custodian has the burden to establish the applicability of an exception. A custodian does not meet this burden if it has not proven that the requested records fall squarely within the exception." (Citations *1217 omitted.) State ex rel. Miller v. Ohio State Hwy. Patrol , 136 Ohio St.3d 350, 2013-Ohio-3720, 995 N.E.2d 1175, ¶ 23. Given that this is the standard, no reasonable public office should have believed that the security footage in this case qualified for the R.C. 149.433 exceptions to the definition of a public record.
{¶ 29} DRC did not act as a reasonable public office when it relied on the exceptions in R.C. 149.433(B) for infrastructure records and security records to support withholding the records this court now orders produced. A well-informed person responsible for the records would have known that there was no justification under public-records law to hold back the security-camera footage sought by Rogers.
{¶ 30} Therefore, since any reduction in statutory damages requires the satisfaction of both R.C. 149.43(C)(2)(a) and (b), the inapplicability of R.C. 149.43(C)(2)(a) means that statutory damages must be awarded pursuant to R.C. 149.43(C)(2). Since statutory damages are awarded at a rate of $100 per business day measured from the filing of the mandamus complaint until the production of the records sought, and since more than ten days passed between those two dates in this case, we award Rogers the statutory maximum of $1,000 in statutory damages.
D. Attorney fees
{¶ 31} This court has recognized that "[o]ne of the salutary purposes of the Public Records Law is to ensure accountability of government to those being governed." State ex rel. Strothers v. Wertheim , 80 Ohio St.3d 155, 158, 684 N.E.2d 1239 (1997). "Inherent in Ohio's Public Records Law is the public's right to monitor the conduct of government."
*555 State ex rel. McCleary v. Roberts , 88 Ohio St.3d 365, 369, 725 N.E.2d 1144 (2000). The expense of litigation can chill the exercise of that right, so R.C. 149.43 recognizes that it is appropriate to award attorney fees to members of the public who pursue litigation to force public offices to release governmental records that are, in fact, public. The availability of attorney fees is a check on a public office's ability to inappropriately deny a public-records request and choose instead protracted litigation. Ohio's public-records law "reinforce[s] the understanding that open access to government papers is an integral entitlement of the people, to be preserved with vigilance and vigor." Kish v. Akron , 109 Ohio St.3d 162, 2006-Ohio-1244, 846 N.E.2d 811, ¶ 17. The availability of attorney fees assists citizens in vigorously enforcing their rights under the law.
{¶ 32} The process set forth in R.C. 149.43 controls whether a court awards attorney fees. R.C. 149.43(C)(3)(b) outlines four different triggering events that grant a court discretion to order reasonable attorney fees in a public-records case. The first is when a court, as in this case, renders a judgment ordering the public office to comply with R.C. 149.43(B) and produce the requested record. The second is when the person responsible for the public records failed to respond at all-affirmatively or negatively-to the public records request in a reasonable amount of time. R.C. 149.43(C)(3)(b)(i). The third is when "the person responsible for the public records promised to permit the relator to inspect or receive copies of the public records requested within a specified period of time but failed to fulfill that promise within that specified period of time." R.C. 149.43(C)(3)(b)(ii). Finally, the court may award attorney fees when "the person responsible for the public records acted in bad faith when the * * * person voluntarily made the public records available to the relator for the first time after the relator commenced the mandamus action, but before the court issued any order." R.C. 149.43(C)(3)(b)(iii).
*1218 {¶ 33} Here, this court has ordered DRC to produce the records that Rogers seeks, and therefore, this court may award reasonable attorney fees to Rogers pursuant to R.C. 149.43(C)(3)(b) ("If the court renders a judgment that orders the public office * * * to comply with division (B) of this section * * * the court may award reasonable attorney's fees to the relator * * * ").
{¶ 34} Rogers is eligible for attorney fees subject to the limitation set forth in R.C. 149.43(C)(3)(c)(i) and (ii). Applying factors identical to those allowing a reduction in statutory damages, a court shall not award any attorney fees if it determines both of the following: (1) that based on the law as it existed at the time, a well-informed person responsible for the requested public records reasonably would have believed that the conduct of the public office did not constitute a failure to comply with an obligation of R.C. 149.43(B) and (2) that a well-informed person responsible for the requested public records reasonably would have *556 believed that the conduct of the public office would serve the public policy that underlies the authority that it asserted as permitting that conduct.
{¶ 35} As discussed above regarding the statutory-damages-reduction factors in R.C. 149.43(C)(2)(a) and (b), the prohibition against an award of attorney fees that arises under R.C. 149.43(C)(3)(c)(i) and (ii) does not apply because no "well-informed public office * * * reasonably would believe" that the failure to produce the security-camera video complied with the Public Records Act.
{¶ 36} "When considering whether to award attorney fees in public-records cases, a court may consider the presence of a public benefit conferred by a relator seeking the disclosure and the reasonableness and good faith of a respondent in refusing to disclose." State ex rel. Cincinnati Enquirer v. Ohio Dept. of Pub. Safety , 148 Ohio St.3d 433, 2016-Ohio-7987, 71 N.E.3d 258, ¶ 53. Regardless of Rogers's purpose in seeking the security video, there is a public benefit in exposing and rectifying DRC's attempt to keep evidence of use-of-force events in prisons out of the public eye. If "the way a society treats those who have transgressed against it is evidence of the essential character of that society," Hudson v. Palmer , 468 U.S. 517, 523-524, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), security-camera video documenting guard-prisoner interaction allows us to effectively enter our prisons and receive at least some information about prisoner behavior and prisoners' treatment by prison personnel. And, as discussed above, we conclude that DRC's failure to disclose the record Rogers sought was not reasonable.
{¶ 37} Therefore, we award Rogers attorney fees in this case. The last part of the statutory process for awarding attorney fees is an application of R.C. 149.43(C)(4), which sets forth four statutory guidelines that apply to "any award of reasonable attorney's fees awarded under division (C)(3)(b) of this section." First, "[t]he fees shall be construed as remedial and not punitive." Second, the fees awarded "shall not exceed the total of the reasonable attorney's fees incurred before the public record was made available to the relator" and the fees allowed by the third factor. Third, included in the fees allowed are "reasonable fees incurred to produce proof of the reasonableness and amount of the fees and to otherwise litigate entitlement to the fees." Fourth, the court may order a reduction of attorney fees if "given the factual circumstances involved with the specific public records request, an alternative means should have been pursued to more effectively and efficiently resolve the dispute." R.C. 149.43(C)(4)(a) through (d).
*1219 {¶ 38} This court will make a final determination of the amount of attorney fees upon review of Rogers's filing of an itemized application with independent evidence supporting the reasonableness of the hourly rates charged and the hours billed. The four statutory guidelines in R.C. 149.43(C)(4) will aid the court in *557 determining the amount of fees to be awarded. Applying the statutory guidelines in R.C. 149.43(C)(4) for attorney fees, Rogers must demonstrate that he is entitled to an award of fees that is "reasonable" and "remedial." R.C. 149.43(C)(4)(a). Specifically, the itemized billing statements should only reflect time spent on the public-records request, the mandamus action, and the proof of entitlement to and reasonableness of the fees. R.C. 149.43(C)(4)(b) and (c). DRC is entitled to respond to Rogers's application, and this court, applying R.C. 149.43(C)(4)(d), could reduce the attorney fees if it finds that "an alternative means should have been pursued to more effectively and efficiently resolve the dispute that was subject to the mandamus action."
{¶ 39} Any person submitting an application for attorney fees should note that "fee applications submitted to this court should contain separate time entries for each task, with the time expended on each task denoted in tenths of an hour" and that "this court will no longer grant attorney-fee applications that include block-billed time entries." State ex rel. Harris v. Rubino , --- Ohio St.3d ----, 2018-Ohio-5109, --- N.E.3d ----, ¶ 7, 14.
E. Motion for protective order
{¶ 40} Because we grant Rogers a writ of mandamus, we deny as moot DRC's motion for a protective order.
III. Conclusion
{¶ 41} For the foregoing reasons, we grant Rogers's request for a writ of mandamus, award Rogers $1,000 in statutory damages, grant his request for reasonable attorney fees, and order DRC to reimburse Rogers for the court costs he paid to file this original action. We deny as moot DRC's motion for a protective order.
Writ granted.
O'Donnell, French, DeWine, and DeGenaro, JJ., concur.
O'Connor, C.J., and Fischer, J., concur in judgment in part and dissent in part, and would grant the writ and order reimbursement of relator's court costs but would not award statutory damages or attorney fees.

The current version of R.C. 149.43(C)(2) includes requests made by "electronic submission." The version of R.C. 149.43 in effect at the time Rogers made his public-records request and filed his complaint in early 2017, 2016 Sub.H.B. No. 471, is the same as the current version for all other relevant purposes.