[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Summers v. Fox*, Slip Opinion No. 2021-Ohio-2061.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2021-OHIO-2061

[THE STATE EX REL.] SUMMERS *v.* FOX, PROS. ATTY., ET AL.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Summers v. Fox*, Slip Opinion No. 2021-Ohio-2061.]**

*Mandamus—Public-records law—Motion for stay moot—Prevailing party not entitled to attorney fees in a case in which the opposing party presented a rational position on an unsettled legal issue—No presumption of bad faith when party makes records available after mandamus case is filed but prior to an order of the court to do so—Failure to deliver public-records request by an authorized method obviates an award of statutory damages—Court costs granted—Attorney fees and statutory damages denied.*

(No. 2018-0959—Submitted April 27, 2021—Decided June 22, 2021.)

IN MANDAMUS.

_____

**Per Curiam.**

{¶ 1} On December 10, 2020, we granted a writ of mandamus (in part) ordering respondents, Mercer County Prosecuting Attorney Matthew Fox and Mercer County Sheriff Jeff Grey ("the county"), to produce documents to relator, Charles A. Summers, in response to his public-records requests. ___ Ohio St.3d ___, 2020-Ohio-5585, ___ N.E.3d ___. This matter is now before the court on Summers's application for court costs, attorney fees, and statutory damages. For the reasons set forth below, we grant the request for an award of court costs and deny the request for attorney fees and statutory damages.

## I. Background

{¶ 2} Charles is the father of Christopher Summers, who is currently serving a 20-year prison sentence after pleading guilty to multiple counts of sexual battery. Christopher's conviction arose out of his conduct toward J.K., a student at the high school where he was a teacher and coach.

{¶ 3} In February 2017, Charles sent a public-records request to Prosecutor Fox for records relating to Christopher's criminal case. In March 2017, he sent a nearly-identical request to Sheriff Grey. Both offices denied the requests for a number of reasons.

{¶ 4} The chief argument that the county presented for not producing the requested records involved R.C. 149.43(B)(8), which provides that when a convicted, incarcerated person seeks to obtain public records concerning a criminal investigation, that inmate must first submit the request to his sentencing judge. Unless the judge finds that "the information sought in the public record is necessary to support what appears to be a justiciable claim of the person" making the request, the public office is not required to produce the records to the inmate. *Id.* In *State ex rel. Barb v. Cuyahoga Cty. Jury Commr.*, 128 Ohio St.3d 528, 2011-Ohio-1914, 947 N.E.2d 670, we held that an inmate cannot circumvent the requirements of R.C. 149.43(B)(8) by designating a third party who is not an inmate to request the records on his behalf. In *Barb*, an inmate's brother made a public-records request

on behalf of his incarcerated sibling, and we held that the requester, though not incarcerated, was equally subject to the statute. Based on our holding in *Barb*, the county asserted that Charles, as Christopher's designee, had to obtain the sentencing judge's approval under R.C. 149.43(B)(8) before he could receive the requested records.

{¶ 5} On May 4, 2017, Charles's attorney sent a follow-up letter to the county, asserting that Charles was not Christopher's designee and, therefore, *Barb* was inapplicable. When that letter was unsuccessful in compelling the production of the public records from the county, Charles commenced this mandamus action.

{¶ 6} Court-ordered mediation resulted in Charles receiving some of the documents that he had requested. But as the case proceeded, the county adopted a new argument: it asserted that sexual-assault victims have a fundamental right to privacy, protected by the Fourteenth Amendment to the United States Constitution and Article I, Section 10a of the Ohio Constitution ("Marsy's Law"), and that releasing the records would infringe on J.K.'s privacy rights. We permitted J.K. to intervene as a respondent in order to assert her own alleged privacy rights. *See* 156 Ohio St.3d 1480, 2019-Ohio-3170, 128 N.E.3d 247.

{¶ 7} Following oral argument, we granted the writ of mandamus in part and denied it in part. ___ Ohio St.3d ___, 2020-Ohio-5585, ___ N.E.3d ___. We rejected the county's argument that Charles was not entitled to the requested public records based on our holding in *Barb* because the county failed to prove that Charles was acting as Christopher's designee. We declined to adopt a per se rule that family members of inmates are presumptive designees of their incarcerated relatives. We also rejected the notion of a federal privacy interest that would trump Ohio's Public Records Act, R.C. 149.43. We ordered the county to produce some, but not all, of the recordings and documents that Charles had requested. On December 30, 2020, we denied the joint motion for reconsideration filed by the county and J.K. 160 Ohio St.3d 1517, 2020-Ohio-6946, 159 N.E.3d 1181.

**{¶ 8}** On December 24, 2020, Charles filed a petition for an award of court costs, statutory damages, and attorney fees, which the county has opposed.

**{¶ 9}** On January 12, 2021, the county filed a certification of partial compliance with this court's judgment, stating that it had not yet produced "[r]ecords that could potentially implicate J.K.'s fundamental informational privacy rights." On the same day, the county and J.K. filed a joint motion to stay the portion of this court's judgment concerning J.K.'s interviews and statements in order to allow the parties time to appeal that provision of the judgment to the United States Supreme Court. On June 7, 2021, the United States Supreme Court denied the county and J.K.'s petition for a writ of certiorari, *Fox v. Summers*, ___ U.S. ___, ___ S.Ct. ___, ___ L.Ed. ___, 2021 WL 2302101 (2021), rendering the joint motion for a stay moot. Also on June 7, the county certified full compliance with this court's December 10, 2020 judgment.

## II. The petition for court costs, attorney fees, and statutory damages

### A. Court costs

**{¶ 10}** An award of court costs is mandatory in a public-records case when the court grants a writ of mandamus compelling a public office to comply with its duties under the Public Records Act. R.C. 149.43(C)(3)(a)(i); *State ex rel. Hedenberg v. N. Cent. Corr. Complex*, 162 Ohio St.3d 85, 2020-Ohio-3815, 164 N.E.3d 358, ¶ 13. The county does not oppose Charles's request for court costs.

**{¶ 11}** We grant the petition for an award of court costs.

### B. Attorney fees

**{¶ 12}** Charles has requested an award of attorney fees in the amount of $66,542.50. The Public Records Act "outlines four triggering events that grant a court discretion to order reasonable attorney fees in a public-records case." *State ex rel. Rogers v. Dept. of Rehab. & Corr.*, 155 Ohio St.3d 545, 2018-Ohio-5111,

4

122 N.E.3d 1208, ¶ 32.[1]  Although not clearly spelled out in the petition, Charles appears to rely on two of the four triggering events in support of his request for an award of attorney fees.

### 1.  Attorney fees to the prevailing party in a public-records action

{¶ 13} If a court renders a judgment that orders a public official to comply with the Public Records Act, the court may award reasonable attorney fees to the relator.  R.C. 149.43(C)(3)(b).  An award of attorney fees under this section is discretionary.  *See State ex rel. Doe v. Smith*, 123 Ohio St.3d 44, 2009-Ohio-4149, 914 N.E.2d 159, ¶ 23, 30.

{¶ 14} A court shall not award attorney fees if the following two conditions are met: (1) based on the law as it existed at the time, a well-informed person responsible for the requested public records would have reasonably believed that the conduct of the public office did not constitute a failure to comply with an obligation of R.C. 149.43(B), and (2) a well-informed person responsible for the requested public records would have reasonably believed that the conduct of the public office would serve the public policy that underlies the authority that it asserted as permitting that conduct.  R.C. 149.43(C)(3)(c); *Rogers* at ¶ 34.  A prevailing party's attorney-fees request in a public-records mandamus action "will be denied where the case presents a matter of first impression because courts should not engage in the practice of punishing a party to a lawsuit for taking a rational position on a justiciable, unsettled legal issue." *State ex rel. Cincinnati Enquirer v. Daniels*, 108 Ohio St.3d 518, 2006-Ohio-1215, 844 N.E.2d 1181, ¶ 35.

{¶ 15} The county rejected Charles's public-records request based on his familial relationship to Christopher and our holding in *Barb* that an inmate's "designee" must comply with R.C. 149.43(B)(8).  *Barb* did not define who constitutes a designee.  *See* ___ Ohio St.3d ___, 2020-Ohio-5585, ___ N.E.3d ___,

---

1. The current version of R.C. 149.43(C)(3)(b) is identical in all relevant respects to the version that was in effect when Charles sent his requests.

at ¶ 97 (French, J., dissenting) ("The single-paragraph opinion in *Barb* * * * affords no indication of the contours of that court-created rule. Nor has this court subsequently provided any additional insight"). The opinion in *Barb* could have been reasonably read, as the county did, to say that a family member is a designee when the family member serves a public-records request with the intent to prove the inmate-relative's innocence. When Charles made his request, there was only one appellate-court decision addressing when a person constitutes a designee under *Barb*, and that case adopted an irrebuttable presumption that a close family member of an inmate is a per se designee. *See State ex rel. Hopgood v. Cuyahoga Cty. Prosecutor's Office*, 8th Dist. Cuyahoga No. 107098, 2018-Ohio-4121, ¶ 7 (holding that wife was in privity with inmate husband and therefore presumptively acting as his designee). Based on these facts, a reasonable public official with the county could have concluded that Charles was not entitled to the records that he had requested and that refusing the request would promote the public policy of restricting inmate requests as embodied in R.C. 149.43(B)(8). Accordingly, Charles's status as the prevailing party in his mandamus action does not entitle him to an award of attorney fees.

### 2. Bad-faith attorney fees

{¶ 16} Alternatively, attorney fees may be awarded in a public-records case if the public office "acted in bad faith when [it] voluntarily made the public records available to the relator for the first time after the relator commenced the mandamus action, but before the court issued any order concluding whether or not the public office * * * was required to comply with division (B)" of the Public Records Act. R.C. 149.43(C)(3)(b)(iii). As previously noted, after rejecting Charles's request in full, the county agreed to provide some records during mediation. Charles contends that this proves the county's reliance on *Barb* was in bad faith: if the county truly believed Charles was not entitled to any records, the county would not have made a partial production.

**{¶ 17}** The plain language of the Public Records Act refutes this argument. The statute expressly states that there is no presumption of bad faith based solely on the fact that the public office makes a record available after the mandamus case is filed but before being ordered by the court to do so. R.C. 149.43(C)(3)(b)(iii). Therefore, to prove bad faith, the party seeking attorney fees must produce some evidence of bad faith other than the fact that the record was produced. *See State ex rel. McDougald v. Greene*, 161 Ohio St.3d 130, 2020-Ohio-3686, 161 N.E.3d 575, ¶ 25.

**{¶ 18}** " 'The term "bad faith" generally implies something more than bad judgment or negligence.' " *Id*. at ¶ 26, quoting *State v. Tate*, 5th Dist. Fairfield No. 07 CA 55, 2008-Ohio-3759, ¶ 13. It " 'imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. It also embraces actual intent to mislead or deceive another.' " *Id*., quoting *Slater v. Motorists Mut. Ins. Co.*, 174 Ohio St. 148, 187 N.E.2d 45 (1962), paragraph two of the syllabus, *rev'd on other grounds*, *Zoppo v. Homestead Ins. Co.*, 71 Ohio St.3d 552, 664 N.E.2d 397 (1994), paragraph one of the syllabus. As discussed above, the county's reliance on *Barb* as a basis for rejecting the public-records requests was reasonable. Charles has not identified any conduct by the county that rises to the level of bad faith.[2]

**{¶ 19}** We hold that Charles is not entitled to an award of bad-faith attorney fees.

### C. Statutory damages

**{¶ 20}** A person requesting public records shall be entitled to an award of statutory damages "if a court determines that the public office or the person

---

2. Charles also complained that the county still had not released some of the records that the county was ordered to produce at the time of filing his application for attorney fees. The reason for this is that the county had filed a motion for a stay of this court's judgment pending the United States Supreme Court's ruling on its joint petition with J.K. for a writ of certiorari. The county's failure to produce records pending this procedural process was not indicative of bad faith.

responsible for the public records failed to comply with an obligation in accordance with division (B) of this section." R.C. 149.43(C)(2). The amount of statutory damages is fixed at $100 per business day during which the official failed to comply with an obligation under R.C. 149.43(B), up to a maximum of $1,000. *Id.*

{¶ 21} Not everyone who submits a public-records request qualifies for statutory damages, even if a writ of mandamus does issue. R.C. 149.43(C)(2) designates the methods by which a public-records request must be transmitted in order for a requester to qualify for an award of statutory damages. In February and March 2017, when Charles sent his requests to the county, a requester qualified for statutory damages only if he or she "transmit[ted] a written request by hand delivery or certified mail * * * to the public office or person responsible for the requested public records," former R.C. 149.43(C)(2), 2016 Sub.H.B. No. 471.[3]

{¶ 22} A requester who fails to prove that delivery was accomplished by one of the authorized methods is ineligible for statutory damages (although the public-records request itself is valid). *See, e.g.*, *State ex rel. Penland v. Ohio Dept. of Rehab. & Corr.*, 158 Ohio St.3d 15, 2019-Ohio-4130, 139 N.E.3d 862, ¶ 16 (denying request for statutory damages under former R.C. 149.43(C)(2), 2018 Am.Sub.H.B. No. 8, because "no evidence suggests that [the requester] delivered his request * * * by hand or certified mail"). A requester seeking statutory damages must prove the method of delivery by clear and convincing evidence. *See State ex rel. Martin v. Greene*, 156 Ohio St.3d 482, 2019-Ohio-1827, 129 N.E.3d 419, ¶ 9.

{¶ 23} There is no evidence in the record to suggest that Charles sent either of his public-records requests by hand delivery or certified mail, nor does Charles contend that he did. Instead, he relies on the subsequent letter, dated May 4, 2017,

---

3. 2017 Sub.H.B. No. 312 amended R.C. 149.43(C)(2) to add "electronic submission" as a qualifying method of service. However, public-records requests are governed by the version of R.C. 149.43 that was in effect at the time of the request. *See State ex rel. Cordell v. Paden*, 156 Ohio St.3d 394, 2019-Ohio-1216, 128 N.E.3d 179, ¶ 11.

in which his attorney attempted to refute the county's reliance on *Barb*. However, the May 4 letter did not comply with the requirements for an award of statutory damages.

{¶ 24} The statutory-damages provision in R.C. 149.43(C)(2) that was in effect at the time of Charles's public-records requests provides, in part, that a person is entitled to statutory damages if he transmits, by a qualifying method, "a written request * * * that fairly describes the public record or class of records." The May 4 letter did not identify with any specificity the records sought. Instead, it indicated that Charles had sent a prior letter requesting "certain records." For this reason, the May 4 letter is not a qualifying communication under R.C. 149.43(C)(2). Charles is not therefore entitled to an award of statutory damages.

### III. Conclusion

{¶ 25} For the reasons set forth herein, we grant Charles's application for court costs. We deny Charles's request for attorney fees and statutory damages.

Application granted in part

and denied in part.

O'CONNOR, C.J., and KENNEDY, FISCHER, DEWINE, DONNELLY, STEWART, and BRUNNER, JJ., concur.

————————————

Santen & Hughes, and H. Louis Sirkin, for relator.

Zashin & Rich Co., L.P.A., Drew C. Piersall, and Jonathan J. Downes; and Matthew K. Fox, Mercer County Prosecuting Attorney, and Amy B. Ikerd, Assistant Prosecuting Attorney, for respondents.

Ohio Crime Victim Justice Center, and Elizabeth A. Well, for intervening respondent, J.K.

————————————