[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Pool v. Sheffield Lake*, Slip Opinion No. 2023-Ohio-1204.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2023-OHIO-1204

THE STATE EX REL. POOL *v.* THE CITY OF SHEFFIELD LAKE.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Pool v. Sheffield Lake*, Slip Opinion No. 2023-Ohio-1204.]**

*Mandamus—Public-records requests—City's efforts to locate requested computer-generated images were reasonable—Writ and requests for statutory damages, court costs, and attorney fees denied.*

(No. 2021-1387—Submitted February 7, 2023—Decided April 13, 2023.)

IN MANDAMUS.

————————

**Per Curiam.**

{¶ 1} Relator, Keith Pool, brings this original action in mandamus to compel respondents, the city of Sheffield Lake and Mayor Dennis Bring (collectively, "the city"), to produce documents in response to a public-records request Pool sent the city. In addition, Pool seeks awards of statutory damages, attorney fees, and court costs. Also pending is Pool's motion for leave to file

supplemental evidence. For the reasons set forth below, we deny the motion for leave, deny the writ of mandamus, and deny Pool's other requests.

## I. BACKGROUND

{¶ 2} Pool is a police officer in Sheffield Lake. When he was hired in September 2020, Pool was the city's only black officer. At that time, Anthony Campo was Sheffield Lake's police chief.

{¶ 3} When Pool worked under Campo, Campo regularly made offensive "Face-in-Hole"[1] signs on his office computer mocking employees of the department. Campo emailed certain Face-in-Hole signs from his city-issued computer, showed them to other employees while on duty, and even printed and posted them on the police department's official bulletin board. For example, Campo inserted Pool's face into an image of the Grim Reaper, which he labeled with a racist slur and displayed on the bulletin board for three weeks. On another occasion, Campo displayed in the department a Face-in-Hole sign that referred to another employee as a "fag."

{¶ 4} On June 25, 2021, Campo used a city computer to print the words "Ku Klux Klan" ("KKK") on a sheet of paper. He placed the "KKK" sign across the back of Pool's coat to cover the word "POLICE" and then gathered other officers to see what he had done. Campo then donned a paper KKK hat and told Pool that he should wear one on his next police call. On June 29, the mayor placed Campo on administrative leave pending an investigation into the incident. Campo announced his retirement that same day.

{¶ 5} On July 30, 2021, Pool, through counsel, submitted a public-records request to the city for the following records:

---

1. "Face-in-Hole" images are created on the "Face-in-Hole" application or website (https://www.faceinhole.com/scenarios [https://perma.cc/3LMS-KRV8]) by uploading photographs of people's faces to insert into an image that has a white space—or "hole"—in place of the face.

(1) [t]he complete personnel or employment records (including records of training and discipline) for former Chief of Police Anthony Campo, including his letter of resignation/retirement;

(2) [r]ecords of complaints or grievances/appeals alleging any wrongdoing by Anthony Campo, along with the records created during the grievance/appeal process, including any notes of meetings with the grievant(s) and any communications related to the grievance/appeal;

(3) [c]omplaints received by Mayor Bring about Mr. Campo and any communications related to these complaints;

(4) [t]he complete personnel or employment records (including records of training and discipline) for Officer Keith Pool;

(5) City employment policies, specifically including equal-opportunity employment policies, in effect from 2018 through the present;

(6) [v]ideo recordings of Mr. Campo at the police department on June 25, 2021, specifically including but not limited to video of him * * * wearing a makeshift Ku Klux Klan hat and placing a "Ku Klux Klan" sign on Officer Pool's jacket;

(7) [i]mages of Officer Pool or any other City employee created using "www.faceinhole.com" or any "Face in Hole" app, including any documents printed and maintained in the Division of Police and any image files saved and/or downloaded to the Division of Police computer used by Mr. Campo or on the printer/copier Mr. Campo used to print such images;

(8) [i]mages or records Mr. Campo created referring to Black Lives Matter or "BLM";

(9) [m]emoranda or other directives issued by Mr. Campo;

(10) [c]ommunications between Mr. Campo and Mayor Bring regarding Officer Pool, including written or electronic communications of any type, such as emails, text messages, instant messages, or communications using any social-media platform;

(11) [c]ommunications between Mr. Campo and any sergeant in the police department regarding Officer Pool, including all written or electronic communications of any type, such as emails, text messages, instant messages, or communications using any social-media platform;

(12) [c]ommunications between Mr. Campo and Officer Pool, including all written or electronic communications of any type, such as emails, text messages, instant messages, or communications using any social-media platform.

The city provided partial responses on August 20 and 27, 2021. Following a discussion between counsel for each side, the city represented that it could provide complete responses by September 21. However, the city did not provide additional documents by that date. After Pool's counsel sent a follow-up inquiry, the city provided additional documents on September 24. Pool's counsel asked the city in writing whether its responses were complete, but the city did not respond.

{¶ 6} On November 12, 2021, Pool filed in this court an original action for a writ of mandamus along with requests for awards of statutory damages, attorney fees, and court costs. The parties agree that as of that date, the city had not produced any Face-in-Hole images in response to item No. 7 listed in Pool's public-records request. The city has not produced many requested documents that Pool believes to exist, but other than the Face-in-Hole signs, Pool limits his merit brief to a discussion of item No. 9 listed in his request: memoranda or other directives issued

by Campo. *See State ex rel. Dunlap v. Sarko*, 135 Ohio St.3d 171, 2013-Ohio-67, 985 N.E.2d 450, ¶ 4-5 (limiting consideration of the relator's public-records mandamus claim to records addressed in his merit brief).

{¶ 7} On January 31, 2022, the city provided Pool with a copy of the Departmental Manual for the Division of Police, which contained directives Campo had issued. On February 18, the city provided a number of Campo's emails, many of which contained the notation "attachment stripped"; no email attachments were included. On February 24, Pool's counsel sent a list of emails for which he wanted to receive "native email files"[2] so that the attachments could be viewed. On April 4, the city provided the requested native email files, in which the attachments could be viewed. Those records included Face-in-Hole images that Campo had created and distributed while he was police chief.

{¶ 8} On July 27, 2022, we granted an alternative writ of mandamus, setting a schedule for the submission of evidence and the filing of briefs. 167 Ohio St.3d 1464, 2022-Ohio-2490, 191 N.E.3d 433. Thereafter, the parties filed a Joint Statement of Uncontested Facts as well as briefs and evidence of their own. Eleven days after submitting his evidence, Pool filed a motion for leave to supplement the record.

## II. ANALYSIS

### A. *The motion for leave to supplement the record*

{¶ 9} On August 11, 2022, the Ohio Civil Rights Commission found probable cause to believe that Pool had been subjected to unlawful discriminatory practices in the workplace. The same day, the commission also issued probable-cause determinations and right-to-sue letters following discrimination complaints filed by two of Pool's coworkers. Pool's counsel did not receive these documents

---

2. A "native" file is the default file format used by the software program that created the file. *E.g.*, *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 674 F.3d 158, 161 fn. 2 (3d Cir.2012).

until after August 16, the deadline for filing evidence in this case. Pool has filed a motion for leave to supplement the record with these letters.

{¶ 10} We deny the motion for leave. The motion does not explain the relevance of these exhibits. In his merit brief, Pool argues that the commission's letters support his allegation that Campo created a hostile work environment, which is relevant to his argument that the Face-in-Hole images document the activities of the office and therefore constitute public records. The letters do support Pool's allegation that he was subjected to racial harassment by Campo and also substantiate some of the specific acts alleged (such as the KKK hat and sign). But the parties have stipulated that Campo created and distributed the Face-in-Hole images attached to Pool's complaint. The commission's letters are therefore unnecessary and are not directly relevant to the issue whether the city has complied with its obligations under the Public Records Act, which is the only issue Pool's action raises.

*B. The mandamus claim*

**1. Standard of review**

{¶ 11} Mandamus is an appropriate remedy by which to compel compliance with Ohio's Public Records Act, R.C. 149.43. *State ex rel. Physicians Commt. for Responsible Medicine v. Ohio State Univ. Bd. of Trustees*, 108 Ohio St.3d 288, 2006-Ohio-903, 843 N.E.2d 174, ¶ 6. The relator must prove, by clear and convincing evidence, that the requested records exist and that they are public records maintained by the public office sued. *See State ex rel. Cordell v. Paden*, 156 Ohio St.3d 394, 2019-Ohio-1216, 128 N.E.3d 179, ¶ 8.

**2. The Face-in-Hole images (item No. 7)**

{¶ 12} Pool contends that the Face-in-Hole images listed as item No. 7 in his public-records request are public records that the city should have produced. The city contends that the Face-in-Hole images are not public records and that even if they are, the city did all it reasonably could to locate them. Assuming that the

images are public records for which the city had an obligation to search, the parties dispute whether the city's search efforts were sufficient. Because we hold that the city's efforts to locate the images were adequate, it is unnecessary to decide whether they are public records.

{¶ 13} The city contends that the reason it has not produced Face-in-Hole images is that it cannot locate any. In his affidavit, Pool attested that "[f]or some of the most offensive images, [Campo] would show them to people and then shred them on the shredder in the police department"—which partly explains why the city has not located hard copies of them. But Pool insists that the images may still exist in electronic format and that the city has not taken sufficient steps to locate them.

{¶ 14} To assist in responding to Pool's public-records requests, the city retained Profile Discovery, a third-party vendor. Profile Discovery "mirrored"— that is, created a forensic image of—Campo's city-issued desktop computer but thereby failed to turn up any Face-in-Hole images. According to Profile Discovery's chief technology officer, the email attachments had been "stripped" and cannot be recovered or recreated. Upon learning this fact, the city's law director collected as many email attachments as he could from recipient city employees and provided them to Pool's counsel.

{¶ 15} In *State ex rel. Toledo Blade Co. v. Seneca Cty. Bd. of Commrs.*, 120 Ohio St.3d 372, 2008-Ohio-6253, 899 N.E.2d 961, we considered a request for a writ of mandamus to compel a public office to recover the contents of emails that were unlawfully deleted in violation of a records-retention policy. We held that the public office had a duty to attempt to recover the deleted emails but that its recovery efforts "need[ed] only be reasonable, not Herculean, consistent with a public office's general duties under the Public Records Act." *Id*. at ¶ 40. Here, the city contends that it satisfied this duty by retaining an outside vendor and recovering email attachments from recipient employees.

**{¶ 16}** In his reply brief, Pool makes two counterarguments. First, he claims that the affidavits submitted by the city "[did] not attest that any records have been destroyed or describe the method by which [the city] searched for electronic versions of the printed records on Mr. Campo's 'mirrored' hard drive." The city did not need to present evidence that Campo destroyed paper copies of his Face-in-Hole creations, because Pool himself introduced evidence of that fact. The city produced expert testimony that the images could not be located on Campo's computer and that they had been stripped from the emails they were attached to and could not be recovered. Pool does not explain why we should discount this testimony merely because the affidavit of Profile Discovery's chief technology officer does not explain the process for mirroring and searching a hard drive.

**{¶ 17}** Second, Pool complains that the city did not search for Face-in-Hole images on the printer Campo used to print them. Pool assumes that a printer stores and retains in its memory every document that it prints, but he has not submitted any evidence to verify that assumption. Moreover, Pool's suggestion that the city must search every computer that could possibly harbor the missing images has no stopping point: if a search of the printer proved fruitless, Pool could next argue that the city should have searched the hard drives of every employee who may have received an email from Campo. But as we stated in *Toledo Blade Co.*, a public office must only make reasonable efforts to recover deleted records.

**{¶ 18}** A public office has no duty to create or provide access to nonexistent records. *State ex rel. Lanham v. Smith*, 112 Ohio St.3d 527, 2007-Ohio-609, 861 N.E.2d 530, ¶ 15. Because the evidence shows that the city made reasonable efforts to locate Face-in-Hole images, we deny the writ of mandamus as to them.

### 3. Memoranda and directives issued by Campo (item No. 9)

**{¶ 19}** Pool contends that the city failed to produce memoranda or other directives issued by Campo between July 2019 and July 2021. In support of his claim, Pool has submitted two memos from Campo that the city did not produce.

{¶ 20} Here again, the city asserts that it has not located any additional memos and that it cannot be compelled to produce what it does not have. In his reply brief, Pool correctly notes that the affidavits submitted by the city establish only that Profile Discovery's forensic search of the computers revealed no additional memos or directives and that the affidavits do not indicate that the Profile Discovery searched paper files for Campo's memos. But Pool's affidavit seems to acknowledge that the city did provide at least one memo from Campo—which raises the question how the city could have located that document unless its paper files had been searched.

{¶ 21} We deny the writ of mandamus with respect to item No. 9 listed on Pools public-records request—memos or other directives issued by Campo.

*C. Statutory damages, attorney fees, and court costs*

{¶ 22} Pool also requests awards of statutory damages, attorney fees, and court costs. We deny these requests.

**1. Statutory damages**

{¶ 23} A person requesting public records "shall" be entitled to recover an award of statutory damages "if a court determines that the public office or the person responsible for public records failed to comply with an obligation in accordance with [R.C. 149.43(B)]." R.C. 149.43(C)(2). Statutory damages are calculated at the rate of $100 for each business day the public office or person responsible for the requested public records has failed to comply with an obligation under R.C. 149.43(B), starting from the date of the filing of a complaint in mandamus, with a maximum award of $1,000. R.C. 149.43(C)(2).

{¶ 24} Pool asserts that he is entitled to statutory damages because the city has never produced some of the records he requested. For the reasons stated above, this contention has no merit.

{¶ 25} Alternatively, Pool premises his damages claim on the city's allegedly unreasonable delay in producing certain requested records. Specifically,

Pool objects to the fact that the city did not produce the department manual until January 31, 2022—six months after Pool sent his records request. However, as the city correctly notes, Pool never requested the department manual itself. Pool's counterargument is that the city should have realized that the manual contained directives issued by Campo and produced the manual for that reason. But Pool does not explain why his request for "[m]emoranda or other directives issued by Mr. Campo" should have put the city on notice that it would find responsive records in the pages of the manual. On these facts, we conclude that a six-month delay in producing the manual—and the directives it contained—was not unreasonable.

{¶ 26} As an alternative basis for statutory damages, Pool cites the eight months that passed before the city provided some Face-in-Hole images in April 2022. According to the Joint Statement of Undisputed Facts, Pool's counsel requested native email files for certain emails on February 24, 2022, and on April 4, the city provided the requested native email files, which had viewable attachments, including Face-in-Hole images. But Pool is not arguing that six weeks was an unreasonable amount of time to produce the native email files. And the city did not have an obligation to conduct a forensic search of its computer systems after receiving Pool's original request in July 2021. The city's search efforts in response to Pool's original request had to be reasonable, not Herculean. *See Toledo Blade Co.*, 120 Ohio St.3d 372, 2008-Ohio-6253, 899 N.E.2d 961, at ¶ 40.

{¶ 27} We deny Pool's request for statutory damages.

### 2. Attorney fees

{¶ 28} The Public Records Act "outlines four different triggering events that grant a court discretion to order reasonable attorney fees in a public-records case." *State ex rel. Rogers v. Dept. of Rehab. & Corr.*, 155 Ohio St.3d 545, 2018-Ohio-5111, 122 N.E.3d 1208, ¶ 32. In his merit brief, Pool makes a claim for attorney fees based on his allegations that the city either unreasonably delayed providing documents or failed to provide complete responses. However, Pool does

not identify a statutory basis for recovering fees based on those allegations. Instead, Pool argues that attorney fees should be awarded under R.C. 149.43(C)(3)(b)(i), (ii), or (iii). The evidence does not support an award of fees under any of those subsections.

{¶ 29} Under subsection (b)(i), attorney fees may be awarded when the public office has "failed to respond affirmatively or negatively to the public records request in accordance with the time allowed." R.C. 149.43(C)(3)(b)(i). The statutory language does not provide for an award of fees whenever the public office has failed to respond *completely*, as Pool suggests. Rather, subsection (b)(i) addresses a public office's ignoring of a request altogether. *See, e.g.*, *State ex rel. Caster v. Columbus*, 151 Ohio St.3d 425, 2016-Ohio-8394, 89 N.E.3d 598, ¶ 9, 51. That is not what happened here.

{¶ 30} Under subsection (b)(ii), attorney fees "may" be awarded when the public office has "promised to permit the relator to inspect or receive copies of the public records requested within a specified period of time but failed to fulfill that promise within that specified period of time." R.C. 149.43(C)(3)(b)(ii). Pool argues that this subsection applies because the city twice promised to provide documents by a date certain and then missed the deadline. According to the Joint Statement of Undisputed Facts, the city represented that it could provide complete responses by September 21, 2021, but failed to provide additional documents on that date. On September 23, the city's counsel promised to provide complete responses by September 24, and the city did in fact provide additional documents on that date. But the September 24 production was not complete, because the city later provided documents such as the department manual.

{¶ 31} In simple terms, Pool is asking for attorney fees based solely on the fact that the city promised to make a supplemental production on September 21 but

was three days late in doing so.[3]  R.C. 149.43(C)(3)(b)(ii) addresses a public office's failure to fulfill a promise to disclose a particular document.  Assuming that R.C. 149.43(C)(3)(b)(ii) applies in this situation, attorney-fee awards under that subsection are discretionary, not mandatory.

{¶ 32} Attorney fees under R.C. 149.43(C)(3) are intended to be remedial, not punitive.  *Rogers*, 155 Ohio St.3d 545, 2018-Ohio-5111, 122 N.E.3d 1208, at ¶ 37.  Pool is asking to recover 100 percent of his fees, although any harm or inconvenience he suffered because of the three-day delay presumably represents a small fraction of the total fees and expenses he incurred throughout this litigation. Therefore, an award of fees would be disproportionate in this case, and we decline to award them.

{¶ 33} Finally, Pool cites subsection (b)(iii), which allows for an award of fees when a public office acts in bad faith by making records available to the requester for the first time after the mandamus action is filed but before a court issues an order compelling the office to turn over records.  *See* R.C. 149.43(C)(3)(b)(iii).  Pool contends that the city's bad faith is evident from the fact that the city did not produce records before the mandamus complaint was filed.  To the contrary, however, R.C. 149.43(C)(3)(b)(iii) expressly states that bad faith may not be presumed based solely on the fact that the public office has made a record available after the mandamus complaint is filed.  To prove bad faith, the party seeking fees must produce some evidence of bad faith other than the fact that the record was produced.  *State ex rel. Summers v. Fox*, 164 Ohio St.3d 583, 2021-Ohio-2061, 174 N.E.3d 747, ¶ 17; *State ex rel. McDougald v. Greene*, 161 Ohio St.3d 130, 2020-Ohio-3686, 161 N.E.3d 575, ¶ 25.  Pool has not met this burden.

{¶ 34} For these reasons, we deny Pool's request for attorney fees.

---

3. R.C. 149.43(C)(3)(b)(ii) does not address a situation in which the office promises to provide records but later discovers additional responsive records—the situation Pool alleges when he refers to the late production of the department manual.

### 3. Court costs

**{¶ 35}** Finally, Pool seeks an award of court costs. R.C. 149.43(C)(3)(a)(i) states that "[i]f the court orders the public office * * * to comply with [R.C. 149.43(B)], the court shall determine and award to the relator all court costs." Because we are not granting a writ of mandamus, we also decline to award court costs.

## III. CONCLUSION

**{¶ 36}** Based on the foregoing, we deny the motion for leave, the writ of mandamus, and Pool's requests for attorney fees, statutory damages, and court costs.

Writ denied.

KENNEDY, C.J., and FISCHER, DEWINE, DONNELLY, and DETERS, JJ., concur.

STEWART and BRUNNER, JJ., concur in part and dissent in part and would award statutory damages.

_____

Peiffer, Wolf, Carr, Kane & Conway, L.L.P., Ashlie Case Sletvold, and Jessica S. Savoie, for relator.

Mazanec, Raskin, & Ryder Co., L.P.A., James A. Climer, and Amy K. Herman; and David M. Graves, Sheffield Lake Law Director, for respondents.

_____